JOURNAL ENTRY AND OPINION
{¶ 1} This matter returns to us on appeal following the trial court's compliance with this Court's instructions in State v.Otte (Jan. 25, 2001), Cuyahoga App. No. 76726 to hold an evidentiary hearing on certain of petitioner, Gary Otte's ("Otte"), claims. The trial court found for the State from which Otte commenced the instant appeal. For the reasons that follow, we affirm.
 {¶ 2} In this post-conviction proceeding, Otte seeks a new trial and/or to invalidate his death sentence imposed by a three-judge panel following his conviction for the burglary, robbery, and murder of two individuals. Otte presented 18 causes of action in his petition, which the trial court originally dismissed in toto. In the initial appeal of this action, this Court affirmed in part, reversed in part, and remanded for an evidentiary hearing on causes of action 1, 6-11, 13, 14, and 18. Id. We incorporate the procedural and substantive facts set forth in the previous opinion here.
 {¶ 3} The trial court held an evidentiary hearing on causes of action 1, 6-9, 13, 14 and 18.[1] The parties presented the claims and evidence under three main categories: whether Otte's use of Mellaril invalidated his jury trial waiver (cause of action 1); whether trial counsel was ineffective for failing to present expert evidence at the suppression hearing, trial and the mitigation hearing concerning Otte's cocaine and alcohol abuse and intoxication (causes of action 6-9 and 13); and whether trial counsel was ineffective in failing to present mitigation evidence (cause of action 14).
 {¶ 4} Otte presented the testimony of his mother, Dr. Richard Nockowitz, M.D., Patricia Synder, medical records manager of Parma Hospital, the operations manager of Parma Hospital's home health care department, the property officer at Parma Police Department, a detective from the Parma Police Department, and Dr. Robert Smith. Otte also introduced numerous evidentiary exhibits, including deposition transcripts of witnesses from Terre Haute, Indiana who said they would have testified on behalf of Otte at the mitigation phase of the trial.
 {¶ 5} The State presented the testimony of Sandra McPherson, Ph.D., J. Shin Lee, M.D., Attorney Patrick D'Angelo, and Phillip Resnick, Ph.D. On a subsequent date, the parties made oral arguments to the trial court.
 {¶ 6} The trial court ruled in favor of the State and Otte has raised two assignments of error for our review, which we will address in the order asserted.
 {¶ 7} "I. The trial court erred by not granting relief on appellant's post-conviction petition, where the evidence adduced at the evidentiary hearing, in conjunction with his post-conviction petition exhibits, showed that appellant was denied his rights guaranteed under the Fifth, Sxith [sic], Eighth, Ninth, and Fourteenth Amendments."
 {¶ 8} "A trial court properly denies a petition for postconviction relief, made pursuant to R.C. 2953.21, and issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." State v. Calhoun (1999), 86 Ohio St.3d 279, paragraph 3 of the syllabus. The trial court is not obligated to "engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law." Id. at 291. "The findings need only be sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion." Id., citing State v. Clemmons (1989), 58 Ohio App.3d 45, 46 [other citations omitted].
 {¶ 9} The trial court has discretion in assessing the credibility of the evidence presented in support of a postconviction petition. Id. We may not reverse the trial court's decision absent an abuse of that discretion. Thus, the appropriate standard of review is whether the trial court's decision is supported by some competent, credible evidence in the record.
 {¶ 10} Otte maintains the trial court failed to consider the evidence he submitted at the evidentiary hearing and addresses the alleged failure according to the three areas of post-conviction claims presented at the hearing. For purposes of clarity, we will do the same.
1. Validity of Jury Waiver
 {¶ 11} We have previously acknowledged that Otte's written waiver is presumptively knowing, intelligent, and voluntary, and he has the burden of showing otherwise. Otte, supra. A written waiver constitutes an effective waiver of the right to trial by jury and no inquiry by the trial court as to whether the waiver was intelligent, voluntary, and knowing is required. State v.Jells (1990), 53 Ohio St.3d 22, 24.
 {¶ 12} The trial court found that Otte voluntarily waived his right to a jury trial "[a]fter a thorough review of the record and testimony." The trial court specifically referred to the treating physician, the record testimony of Dr. McPherson, the record and comments of Otte's trial attorney, the jury colloquy, and the testimony of the State's expert, Dr. Resnick. Otte contends that this was not competent, credible evidence in light of other evidence presented at the hearing. After a complete review of the evidence, we do not agree.
 {¶ 13} Otte did present conflicting evidence through the expert testimony of Dr. Nockowitz, et al. Specifically, Nockowitz opined that Otte's use of Mellaril rendered him unable to make a knowing and intelligent waiver of his right. Nockowitz based his opinion on the progress notes of the treating physician as well as his expertise as a psychopharmacologist. On cross-examination, however, he conceded that there are no medical records that document Otte's condition on June 25, 1992, the date of the waiver. And Otte was able to testify with some specificity at his suppression hearing that same day. Nockowitz suggested that Otte's ability to testify would not be indicative of his ability to enter a knowing and intelligent waiver of his legal rights.
 {¶ 14} Otte attacks the evidence relied upon by the trial court, essentially arguing it should be given no weight. Our review of the record indicates that Dr. Resnick based his opinion on a myriad of sources in addition to those sources considered by Nockowitz. Unlike Nockowitz, Resnick found it significant that Otte was able to give coherent testimony at his suppression hearing on June 25, 1992. Resnick also pointed out that jail records reflect Otte engaged in violent behavior even before he received anti-psychotic medication. In his opinion, there was no evidence to conclude that Otte's waiver was unknowing and involuntary.
 {¶ 15} Resnick was qualified as an expert and we see no reason why his opinion should be afforded no weight. Quite simply, the experts presented conflicting testimony, which the trial court, in an appropriate exercise of its discretion, resolved in favor of the State.
 {¶ 16} Dr. McPherson's testimony was relevant to answer the question of this Court as to whether she knew Otte was being prescribed Mellaril. She verified that she was aware that Otte was on this medication. While McPherson may not have specifically tested Otte's competency, she made clear she had no concern that he was unable to waive his right to a jury. Trial counsel also had no concerns about Otte's ability to effectively waive this right; nor is any such concern reflected in the jury colloquy.
 {¶ 17} Mrs. Otte offered hearsay testimony that one of Otte's attorneys told her that Otte did not want to waive his right to a jury trial but they had convinced him to do so. However, that attorney did not testify at the evidentiary hearing. Further, Otte's other trial counsel indicated that Otte was advised and agreed to waive his right to a jury trial. This evidence has no bearing on Otte's cognitive ability to waive his right and it is not sufficient to make the trial court's decision an abuse of discretion.
 {¶ 18} We find that the trial court relied upon competent, credible evidence to support its resolution of this issue in favor of the State.
2. Effectiveness of Counsel at Penalty Phase
 {¶ 19} A claim of ineffective assistance of counsel must be established as follows: (1) petitioner must show that counsel's performance was deficient; and (2) petitioner must show that the deficient performance prejudiced his defense. Strickland v.Washington (1984), 466 U.S. 668, 687. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 20} Otte argued that trial counsel should have presented more information from the mitigation information in his possession and his failure to do so was ineffective. On appeal, Otte focuses on trial counsel's failure to call certain witnesses from Terre Haute, Indiana, and failure to present certain school records and "Covered Bridge District records."
 {¶ 21} The trial court found that trial counsel made a reasonable tactical decision not to present more of the information gathered by its mitigation specialist during the penalty phase. The trial court relied on the testimony of attorney D'Angelo at the evidentiary hearing. D'Angelo recalled discussing the information with his co-counsel and the mitigation specialist. He remembers that much of the information could be viewed as a "double-edged sword." The trial court quoted at length D'Angelo's explanation of his decision. According to D'Angelo, Otte was involved in the decision not to use the mitigation evidence and said it was okay.
 {¶ 22} The presentation of mitigating evidence is a matter of trial strategy. State v. Keith (1997), 79 Ohio St.3d 514. "[T]he mere failure to present mitigating evidence at the penalty phase of a capital trial does not itself constitute proof of ineffective assistance of counsel or deprivation of the accused's right to a fair trial." Id.
 {¶ 23} Otte's trial counsel did present witnesses who testified about problems he experienced as a child. In particular, Otte's parents testified on his behalf.
 {¶ 24} Otte contends his attorneys should have called certain witnesses to provide additional testimony about the difficulties he experienced as a child. Being mindful of what is necessary to constitute ineffective assistance of counsel, it is relevant to note that the Ohio Supreme Court explicitly gave "little weight to Otte's psychological problems and even less to his childhood difficulties." State v. Otte (1996), 74 Ohio St.3d 55. We are aware that the Ohio Supreme Court did not have the testimony of the Terre Haute witnesses or school records referred to at the postconviction relief evidentiary hearing. Nonetheless, we are not reviewing this case in a vacuum and the Ohio Supreme Court's opinion is helpful towards ascertaining what impact additional information on this topic could have had on the outcome of Otte's sentence.
 {¶ 25} We have reviewed the deposition transcripts of the Terre Haute witnesses that were taken in 2002, ten years after Otte committed the underlying crimes. Otte's second and fifth grade teacher recalled him as a "very sad little boy" and that his parents were very involved and concerned because he was having problems. She recalled Otte's difficulty in getting along with other children. She described Otte as affectionate and not mean. Otte had trouble fitting in. Otte's fourth grade teacher recalled Otte having academic and social difficulties. He was often physically bullied but was passive and submissive. Otte had some learning difficulties and was not a strong student. The administrative secretary from Crawford Bridge School District testified that Otte's school records were destroyed February 27, 2002. She, however, indicated that the computer log revealed a handwritten note that Otte was classified as seriously emotionally handicapped. According to this witness, there is no way to tell whether these records had been requested before. Lastly, the executive director of Chances for Indiana Youth testified that she worked with Otte for less than a year. Otte admitted to her that he was involved in drug use and having serious conflicts with his parents. Otte spent time at Gibault School, a detention facility, in the inpatient residential facility and the transitional home. Otte reportedly did well in this environment and his parents were very supportive. Otte also informed her that he had difficulties with going to church and with the Morman religion that his parents practiced. She described his drug abuse at that point beyond experimentation towards regular use, if not addiction.
 {¶ 26} All witnesses claimed they gave similar testimony to Otte's mitigation specialist in 1992 and would have willingly testified at his trial. The information gathered by the mitigation specialist is not part of this record. We have assessed the record, including trial counsel's stated reasons for not offering it in mitigation. Some of the evidence could have been viewed as damaging in that it documents Otte's continued social and academic problems, escalating substance abuse, and some trouble with the law. Because the mitigation materials are missing and the original school records were destroyed, the mitigation value of the school records cannot be determined notwithstanding that the computer log indicates that Otte was classified as seriously emotionally handicapped. Thus, we cannot say that the tactical decision not to use this information at the penalty phase was unreasonable.
 {¶ 27} Additionally, Otte contends trial counsel was ineffective by not retaining and presenting expert evidence concerning his substance abuse disorder in mitigation.
 {¶ 28} Otte presented the expert testimony of Dr. Smith whose opinion was that Otte suffered from drug and alcohol addiction that influenced his actions in committing the underlying crimes. Otte contends that trial counsel should have offered this type of evidence at the penalty phase.
 {¶ 29} We construe the State's two-fold response as follows: (1) the facts surrounding the murders and Otte's confessions indicate he was not so impaired by his addictions in committing these murders to consider it much of a mitigating factor regardless of an expert opinion; and (2) the panel's awareness of Otte's reported addictions undermine a claim that counsel was ineffective for not calling an expert witness to elaborate on the medical implications of such addictions.
 {¶ 30} The trial court found that the three-judge panel was aware of Otte's claimed intoxication and substance abuse and still imposed the death penalty. The trial court concluded that the impact, if any, of expert testimony on the pharmacological effects of such use and addiction was merely speculative.
 {¶ 31} It is well settled that alcoholism and other addictions are given little weight in the sentencing phase.State v. Slagle (1992), 65 Ohio St.3d 597, 614, citing Statev. Morales, 32 Ohio St.3d at 261; State v. Hicks (1989),43 Ohio St.3d 72, 80; State v. Lawson (1992), 64 Ohio St.3d 336,352. Consistent with this precedent, the Ohio Supreme Court in Otte's direct appeal indicated its regard of drug and alcohol use a weak mitigating factor. State v. Otte (1996),74 Ohio St.3d 55.[2] No court that has addressed this matter has ever questioned the validity of Otte's reported drug and alcohol abuse. Therefore, expert testimony was not needed to establish its existence.
 {¶ 32} Otte presents us with no case law to suggest that the addition of expert testimony at the penalty phase on this topic could somehow increase the mitigating weight of this factor. Accordingly, Otte did not prove that trial counsel's conduct in failing to present an expert on substance abuse at the penalty phase was either deficient or resulted in an unfair trial.
"3. Effectiveness of Counsel Related to Police Interrogationand Miranda Waiver and Drug and Alcohol Addiction andWithdrawal
 {¶ 33} Evidence of police coercion is a necessary prerequisite to a finding that a confession was involuntary or that a waiver of rights was not made knowingly, intelligently, and voluntarily. State v. Hill (1992), 64 Ohio St.3d 313, 318;State v. Combs (1991), 62 Ohio St.3d 278, 285. "The court has adhered to this rule despite arguments by defendants that their confessions or waivers were involuntary due to their low mental aptitude or mental retardation, or ingestion of drugs or alcohol." State v. Eley (Dec. 20, 1995), Mahoning App. No. 87 C.A. 122, affirmed by 77 Ohio St.3d 174.
 {¶ 34} Physical abuse, threats, or deprivation of food, medical treatment or sleep are some "inherently coercive tactics" which, if present in a case, will render a confession or a waiver involuntary. Id., citing State v. Cooey (1989),46 Ohio St.3d 20, 28; State v. Clark (1988), 38 Ohio St.3d 252, 261.
 {¶ 35} Following his arrest, Otte made statements to the police on three separate dates when he confessed in detail. Otte contends that his addictions and withdrawal symptoms prevented him from making a knowing, intelligent, and voluntary waiver of his Miranda rights prior to giving these statements. He presented various police documents and the testimony of Dr. Smith, a clinical psychologist, at the evidentiary hearing. Dr. Smith relied on Parma Hospital records of Otte's reported drug and alcohol intake and police records documenting the time of his arrest to conclude when Otte would have begun to experience withdrawal. Dr. Smith detailed the effects of withdrawal on an addict in general. He concluded that Otte was experiencing withdrawal as he was taken to the hospital and prescribed medication. Dr. Smith coupled this with Otte's repeated conversations with police to suggest that Otte was extremely susceptible to police coercion to confess to the murders. Therefore, Dr. Smith concluded that Otte's statements were the result of coercion. He then explained Otte's detailed confessions as being Otte's reconstruction from what the police told him.[3] Dr. Smith explained this as a phenomenon common in substance abusers to compensate for periods of black out. He opined that Otte was incapable of waiving his rights because of withdrawal. On cross-examination, however, Dr. Smith acknowledged that patients suffering from withdrawal symptoms do sign consent forms when they enter his treatment facility.
 {¶ 36} The State offered the testimony of Dr. Resnick who concluded that Otte made knowing, intelligent, and voluntary waivers of his Miranda rights on all of the days he made statements.
 {¶ 37} Dr. Resnick found Otte was capable of entering knowing waivers by virtue of his I.Q. level, which was beyond mental retardation range. He reviewed hospital records and Otte's testimony from his suppression hearing on June 25, 1992 where Otte acknowledged that he understood his Miranda rights and that he waived them prior to his statements. Otte was capable of an intelligent waiver due to a lack of evidence to suggest otherwise. Dr. Resnick explained withdrawal symptoms can range from mild to severe and he felt the records indicated that Otte's were mild. In addition, Dr. Resnick pointed to the testimony of the police officers who described Otte as calm, cool, and collected. The officers did not observe Otte shaking. In Dr. Resnick's opinion, Otte's signatures on the waivers were clear and did not show signs of shakiness. The records also indicate that Otte was prescribed 25-50 milligrams of Librium for his withdrawal but consistently received only 25 milligrams despite the discretion to give him more. Otte also offered a rational motive for giving his confessions, i.e., hopes of avoiding the death penalty.
 {¶ 38} Dr. Resnick concluded the statements were voluntary because Otte did not complain of drug cravings. There is no evidence that Otte was either threatened or that any treatment was withheld as a means to induce Otte's statements.
 {¶ 39} Finally, Dr. Resnick disagreed with Dr. Smith's report because it failed to tie the possible symptoms of withdrawal with any definitive evidence that Otte suffered from those symptoms. He felt Dr. Smith's opinion merely theorized the presence of the symptoms as opposed to showing the actual presence of the symptoms when Otte made his statements.
 {¶ 40} The trial court found that Otte's waivers were valid, notwithstanding the additional expert opinion on drug and alcohol addiction and withdrawal, and therefore trial counsel was not ineffective for failing to obtain such an expert. The trial court based this decision on a review of the record, the Ohio Supreme Court's opinion that addressed Otte's claims that intoxication and subsequent withdrawal rendered his confessions involuntary, and Dr. Resnick's opinion that Otte was capable of making a voluntary waiver of his Miranda rights even if he was experiencing withdrawal symptoms. Thus, we reject Otte's contention that the trial court failed to consider the evidence presented at the evidentiary hearing. Just because Otte presented conflicting evidence does not mean that the evidence the court relied upon was other than competent and credible. The trial court was not required to engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law but only to make findings sufficiently comprehensive and pertinent to the issue to form a basis upon which the evidence supports the conclusion. Ibid.
 {¶ 41} We find the trial court's decision was based on competent, credible evidence and accordingly Assignment of Error I is overruled.
 {¶ 42} "II. The trial court erred by not applying applicable case law to the evidence presented at the post-conviction hearing, thereby denying appellant his rights guaranteed under the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments."
 {¶ 43} Otte contends the trial court failed to apply the proper law in resolving his claims. Otte addresses his claims in the same order.
1. Jury trial waiver
 {¶ 44} Otte claims the jury-waiver colloquy was a "mere matter of rote" in violation of his constitutional rights. This claim is based on the record evidence from Otte's trial and the subject of a direct appeal. To the extent that Otte reiterates his claims that Mellaril invalidated the jury waiver, we have addressed this above.
2. Effectiveness of Counsel at Penalty Phase
 {¶ 45} Otte complains that the trial court did not apply the proper law in resolving this claim, citing Wiggins v. Smith,539 U.S. 123 (2003); Strickland v. Washington, 466 U.S. 668
(1984) and Bigelow v. Williams, No. 92-4203, 2004 U.S. App. LEXIS 9058 (6TH Cir. 2004). This claim lacks merit. As we have previously discussed, the evidence supports the trial court's finding that counsel made a reasonable tactical decision not to utilize all of the information in their possession at the penalty phase. Therefore, the trial court's decision was consistent with the referenced law.
3. Effectiveness of Counsel Concerning Drug and AlcoholAddictions and Intoxication
 {¶ 46} Otte claims the trial court relied on the "ineffective evidence presented at the suppression hearing and reviewed by the Ohio Supreme Court's direct appeal decision" and nothing else in resolving this issue. The trial court's decision, however, explicitly reflects that it relied on evidence presented at the post-conviction hearing and therefore this claim lacks merit.
 {¶ 47} Assignment of Error II is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Karpinski, J., and *Sweeney, J., Concur.
(*SITTING BY ASSIGNMENT: Judge James D. Sweeney, Retired, of the Eighth District Court of Appeals.)
[1] Although the remand also encompassed an evidentiary hearing on causes of action 10 and 11, Otte withdrew these claims because discovery revealed he was not psychotic.
[2] It is also important that "a court is not necessarily required to accept as mitigating everything offered by the defendant and admitted. Nor is the court automatically required to give such admissible evidence any weight. State v. Steffen
(1987), 31 Ohio St.3d 111, paragraph two of the syllabus." Statev. Eley (1996), 77 Ohio St.3d 174 (affirming death sentence despite evidence of defendant's dysfunctional family, substance abuse, and low intellect and noting that others with similar backgrounds have grown up as law-abiding citizens).
[3]There is no evidence in the record to support this theory other than Dr. Smith's speculation.