OPINION
{¶ 1} Appellant Thomas C. Rector appeals the decision out of the Carroll County Court of Common Pleas overruling his motion for postconviction relief. Appellant was convicted on four counts of raping his seven-year old stepdaughter. His postconviction relief motion alleged that his attorney was ineffective by failing to call certain witnesses who might provide an alibi for two of the rape charges and who might challenge the credibility of the victim. This postconviction relief petition has been reviewed previously by this Court, and the case was remanded to the trial court so that an evidentiary hearing could be held.
 {¶ 2} Appellant presented five witnesses at the evidentiary hearing. These witnesses did not provide a full alibi, but only narrowed down the time and location where two of the rapes may have occurred. Two of the witnesses offered testimony that tended to question the credibility of the victim's father, Paul Vogley. There was no indication, though, that trial counsel knew or had reason to suspect that such impeachment evidence was available at the time of the trial. Furthermore, counsel's strategy at trial was to challenge the victim's credibility by implying that she simply memorized notes prepared by the prosecutor. The jury obviously did not believe this argument. The fact that subsequent counsel has conceived another possible strategy involving an attack on the credibility of the victim's father does not invalidate the original trial strategy. Appellant has not established that counsel was ineffective or that the outcome of the trial would have been different if the additional witnesses had been called. Therefore, Appellant's arguments are without merit and the judgment of the trial court is affirmed.
 History of the Case {¶ 3} Appellant was indicted by the Carroll County Grand Jury on November 1, 2000, on five counts of rape against his step-daughter, who was seven years old at the time. The victim was the natural child of Carrie Rector and Paul Vogley, who were married from 1992 to 1994. Carrie subsequently married and divorced again before marrying Appellant. Carrie and Appellant resided in Carrollton, Ohio, at the time the crimes occurred.
 {¶ 4} The charges were all first degree felonies pursuant to R.C. § 2907.02(A)(1)(b). Appellant was convicted of four of the rape charges on March 27, 2001, and was sentenced to ten years in prison for each count, to be served consecutively.
 {¶ 5} Appellant filed a direct appeal of his conviction, which was decided by this Court on December 31, 2002. State v.Rector, 7th Dist. No. 01 AP 758, 2002-Ohio-7442. While the direct appeal was still pending, Appellant filed a petition for postconviction relief on December 10, 2001, pursuant to R.C. §2953.21. In that petition Appellant claimed that his trial counsel was ineffective for failing to call a number of witnesses who might provide an alibi for two of the rape charges, and for failing to adequately challenge the credibility of the victim and her father. Appellant's petition was ultimately denied by the trial court without a hearing on August 30, 2004. Appellant appealed the trial court's judgment, and this Court determined that there should have been an evidentiary hearing, based on the ten affidavits from nine different witnesses Appellant submitted to the trial court. State v. Rector, 7th Dist. No. 02 AP 772, 2003-Ohio-3283. The trial court held the evidentiary hearing on December 16, 2003. At that hearing, Appellant called only five of the nine witnesses who had submitted prior affidavits. The trial court denied the petition for postconviction relief again on August 30, 2004.
 {¶ 6} While the postconviction relief proceedings were being litigated, Appellant's direct appeal terminated. This Court upheld the conviction and sentence, but also remanded the case to the trial court to conduct a new sexual predator classification hearing. Rector, supra, 7th Dist. No. 01 AP 758, 2002-Ohio-7442, ¶ 121. Appellant later filed an application to reopen his direct appeal, which was denied by this Court on October 1, 2003. Appellant filed further appeals, ultimately to the United States Supreme Court, and each of those efforts terminated in favor of the state.
 Res judicata issue {¶ 7} Appellant's arguments in this appeal all stem from a basic claim of ineffective assistance of trial counsel. Appellant also raised this issue in his direct appeal, and it was found to be without merit. Id. The trial court indicated that res judicata may act to bar the issues raised in Appellant's postconviction relief motion. (8/30/04 J.E., p. 5.) The trial court is correct that, generally, once an issue such as ineffective assistance of counsel has been or could have been raised on direct appeal, the same issue cannot be further reviewed, even in postconviction relief proceedings: "Once ineffective assistance of counsel has been raised and adjudicated, res judicata bars its relitigation." State v. Cheren (1995), 73 Ohio St.3d 137, 138,652 N.E.2d 707, citing State v. Perry (1967),10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.
 {¶ 8} Nevertheless, if an issue could not have been fully litigated on appeal without reference to evidence outside of the official record (a.k.a. "dehors the record"), it is possible for that issue to be raised again in postconviction proceedings:
 {¶ 9} "Since our pronouncement in State v. Perry, supra,
this court and several lower courts have recognized exceptions to the absolute application of the doctrine of res judicata in proceedings for postconviction relief where ineffective assistance of counsel is claimed. * * *
 {¶ 10} "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant. * * * Generally, the introduction in an R.C. 2953.21 petition of evidence dehors the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis ofres judicata." State v. Cole (1982), 2 Ohio St.3d 112,113-114, 443 N.E.2d 169.
 {¶ 11} Appellant's postconviction relief theory depends upon the testimony of five witnesses who were not called to testify at trial, and who have knowledge of certain facts that were not made known at trial. Many of these facts were not in the record on direct appeal, and thus, could not have been used to support Appellant's earlier arguments of ineffective assistance of counsel. Therefore, it would appear that res judicata does not bar Appellant from arguing ineffective assistance of counsel in these postconviction relief proceedings.
 Assignment of Error {¶ 12} "The trial court erred in denying Mr. Rector's postconviction petition because the totality of the evidence presented at trial and subsequent to the trial demonstrates that Mr. Rector was denied the effective assistance of counsel at trial. Sixth and Fourteenth Amendments to the United States Constitution, and Section Sixteen, Article I of the Ohio Constitution."
 {¶ 13} Although Appellant listed three subissues under his assignment of error, he does not pursue those subissues in his actual argument on appeal. The argument Appellant actually makes is that the five witnesses presented at the postconviction relief hearing on December 16, 2003, should have been used by counsel as witnesses at trial, and that their testimony would likely have altered the outcome of the trial. Appellant has not set forth the specific legal basis for his ineffective assistance of counsel argument and failed to cite this Court's or the trial court's standard of review. Prior to setting forth these standards, we note that Appellant's argument on appeal is in large part an attack on dicta contained in the trial court's judgment entry relating to the judge's opinion of this Court and his opinion of the public defender's office. At the hearing, the trial judge repeatedly expressed his dissatisfaction with this Court and his bewilderment as to why this case was remanded for an evidentiary hearing. These comments were clearly inappropriate and have only fueled further litigation. Of course, part of the frustration here stems from counsel's failure to present testimony from all nine witnesses from whom he obtained affidavits and from the nature of the testimony actually elicited, which is drastically different from the allegations contained in certain of the affidavits. Nevertheless, the issue on appeal is ineffective assistance of counsel and not the personal feelings of the trial judge.
 {¶ 14} Postconviction relief is governed by R.C. §2953.21(A)(1). The version of R.C. § 2953.21 that was in effect when Appellant filed his postconviction relief petition provided:
 {¶ 15} "(A)(1) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief."
 {¶ 16} To obtain postconviction relief in the trial court, a petitioner bears the initial burden of presenting evidentiary documents containing sufficient operative facts to demonstrate a denial of a constitutional right and resulting prejudice. Statev. Jackson (1980), 64 Ohio St.2d 107, 18 O.O.3d 348,413 N.E.2d 819. The standard of review of a trial court's decision denying postconviction relief is a mixed question of law and fact, which means that factual issues are reviewed under a manifest weight of the evidence standard, and legal issues are reviewed de novo.State v. Williams, 162 Ohio App.3d 55, 2005-Ohio-3366,832 N.E.2d 783, ¶ 24. The trial court's factual findings will not be reversed unless they are against the manifest weight of the evidence. State v. Cornwell, 7th Dist. No. 00-CA-217, 2002-Ohio-5177, ¶ 28. Judgments will not be reversed as being against the manifest weight of the evidence if they are supported by some competent, credible evidence. Id.; C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Upon accepting such findings of fact, an appellate court then independently determines whether the trial court's conclusions of law are proper. Cornwell, supra, at ¶ 28.
 {¶ 17} The precise constitutional violation raised in this appeal is ineffective assistance of counsel. In Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court established the process for evaluating a claim of ineffective assistance of counsel. The court held that an appellant must first show that his counsel's performance was deficient. Id. at 687. An appellant demonstrates this by "showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, the appellant must show that his counsel's deficient performance prejudiced him to the effect that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 18} In State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623, the Ohio Supreme Court held that:
 {¶ 19} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." Id. at 396-397.
 {¶ 20} The burden of proof is placed upon the appellant to prove ineffective assistance of counsel, "since in Ohio a properly licensed attorney is presumably competent." Id. at 397, citing Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164. A defendant is not entitled to the best or most brilliant counsel available, but rather, counsel whose decisions fall within the wide range of reasonable professional assistance.State v. Baker, 7th Dist. No. 03-CO-24, 2003-Ohio-7008.
 {¶ 21} If counsel's trial tactics are cited as the basis for ineffective assistance of counsel, it must be kept in mind that debatable trial tactics rarely constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 47, 16 O.O.3d 35, 402 N.E.2d 1189. There is a strong presumption that counsel's choice of tactics constitutes a sound strategy: "A court must presume that a broad range of choices, perhaps even disastrous ones, are made on the basis of a tactical decision and do not constitute ineffective assistance of counsel." State v.Kovac, 150 Ohio App.3d 676, 2002-Ohio-6784, 782 N.E.2d 1185, ¶ 65. "Judicial scrutiny of counsel's performance must be highly deferential, and `strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" State v. Leonard,104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 149, citing Strickland,
supra.
 {¶ 22} Appellant's theory of ineffective assistance of counsel has two aspects. First, he contends that three of his witnesses established an alibi for him on two of the counts of rape. Count three of the indictment charged Appellant with rape "on or about December 24, 1999," and count four of the indictment charged him with rape "on or about November 20, 1999 to November 27, 1999." Appellant contends that the state attempted to prove that those two rape charges actually occurred in Appellant's home on Thanksgiving night and Christmas Eve of 1999. Appellant contends that the testimony of three of the witnesses established that the child did not stay with Appellant on either of those two nights. Appellant concludes that his trial counsel should have called these witnesses to establish this alibi.
 {¶ 23} Appellant presumes that he could not have been convicted unless the evidence established that the rapes occurred on Thanksgiving or Christmas Eve. The indictment, though, did not specify that the rapes occurred precisely on those days. In fact, an indictment is not required to specify a date for the occurrence of the crime charged, unless the date is an actual element of the crime. State v. Sellards (1985),17 Ohio St.3d 169, 171, 17 OBR 410, 478 N.E.2d 781; see also R.C. § 2941.03(E). As Appellee and the trial court both point out, Appellant's alibi theory is based on a faulty premise and does not account for the entire range of time that the rapes may have occurred.
 {¶ 24} Appellant also attempted to prove that the victim's father, Paul Vogley, was not a credible witness and may have previously made false accusations of sexual assault against someone. Appellant would like this Court to infer that Paul Vogley not only fabricated the charges but also forced the victim to lie in court. Appellant attempted to prove this by the very brief testimony of two witnesses, one of whom allegedly heard Paul Vogley admit to falsely accusing someone of committing a sexual assault. Appellant contends that his trial counsel was ineffective for not establishing these facts at trial.
 {¶ 25} Appellant's argument largely depends on the specific testimony presented at the December 16, 2003, hearing. The first witness at that hearing was Carrie, the victim's mother. Carrie Rector testified that she generally had custody of her daughter on the weekends, and not on school days. (12/16/03 Tr., p. 5.) She testified that her visitation arrangement allowed her to see her daughter whenever she wanted. (12/16/03 Tr., p. 5.) She testified that she and the child spent Thanksgiving day of 1999 at the home of Donna and Delbert Rector, Appellant's parents. (12/16/03 Tr., p. 6.) Carrie was not sure if Paul Vogley brought the child to the house, or if she herself had picked up the child. (12/16/03 Tr., p. 7.) Carrie testified that she and her father took her daughter back to Paul Vogley sometime during Thanksgiving day. She did not know where the child spent Thanksgiving night, but did state that her daughter was not with her on Thanksgiving night. (12/16/03 Tr., p. 8.) Carrie also testified that she had custody of the child on Christmas day of 1999, again at the home of Donna and Delbert Rector. (12/16/03 Tr., p. 8.) She testified that her daughter stayed there until late in the evening, and was then returned to Paul Vogley. (12/16/03 Tr., p. 9.) Carrie later testified that she could not recall if her daughter slept at Donna and Delbert Rector's house on Thanksgiving or Christmas of 1999. (12/16/03 Tr., p. 13.) She testified that Appellant was with her on both Thanksgiving day and Christmas day. (12/16/03 Tr., p. 13.) She did not know if Appellant was left alone with the child on either of those two days. (12/16/03 Tr., p. 15.)
 {¶ 26} Carrie testified that she had spoken to Appellant's attorney and investigators many times prior to the original trial. (12/16/03 Tr., p. 4.) She did not testify as to the specific information she had given them concerning the child's whereabouts on Thanksgiving and Christmas of 1999.
 {¶ 27} Carol Zorger, the victim's maternal grandmother, testified that she did talk to Appellant's trial counsel before and during the trial. (12/16/03 Tr., pp. 17, 25-26.) There is no indication in her testimony what she discussed with counsel. She testified that she did not attend the holiday parties at Donna and Delbert Rector's house on Thanksgiving or Christmas of 1999. (12/16/03 Tr., p. 26.) She did relay the following conversation that she allegedly had with Paul Vogley on an unspecified date:
 {¶ 28} "Q. * * * So Paul calls you on the phone, and what happens?
 {¶ 29} "A. He asked me if Carrie was there and I told him `no', and he said well, you know, we got a serious issue going on here. He says uh, `Tom raped [his daughter].' And I said, `What?', you know, about like that you know, and I said I'll tell you what. I'll send Jim over and we'll get the straightened around or whatever. So Jim went over and got Carrie. Carrie was on the phone and talking to him and Carrie handed me back the phone again. Well, I told Paul, I said `I just can't buy this. I don't believe it.' I said, `[the child] lies.' `What do you mean, she lies?' I said, `Well she tells me you throw her on the bed until you want, you know, either she tells you what you want to hear or she tells you what goes on, so you know.'
 {¶ 30} "Q. What about this prior —
 {¶ 31} "A. And then I said she also tells me you know, what about the Jim, that you know, saying that Jim fondled her or you know, abused her or whatever, and he says, `Well, I made that story up.' And, of course, at that point I just went off because I can't, I don't understand why anybody would do something like that to somebody else you know." (12/16/03 Tr., pp. 22-23.)
 {¶ 32} Carol Zorger did not testify that she ever attempted to convey this information to anyone before or during trial.
 {¶ 33} Atlee Rosenberger III, who is Carrie Rector's brother, testified that he used to be Paul Vogley's friend and that the two of them would periodically go hunting together. (12/16/03 Tr., p. 28.) He stated that he is no longer Paul Vogley's friend. (12/16/03 Tr., p. 29.) He further testified as follows:
 {¶ 34} "Q. Did you ever speak with Paul [Vogley] about Paul's feelings toward you mom and your sister?
 {¶ 35} "A. Yes, when we were out shooting or whatever we would talk about stuff like that and Paul told me like, he said he wished there was a way he could make it so my mom and my sister wouldn't get to see [his daughter] anymore * * *.
 {¶ 36} "Q. How many times did Paul say that in your presence?
 {¶ 37} "A. At least twice." (12/16/03 Tr., p. 29.)
 {¶ 38} He also testified that Paul and Carrie had agreed that Paul would have custody and that Carrie could have visitation whenever she liked. (12/16/03 Tr., p. 30-31.) He testified that Paul had agreed to this arrangement, but that Paul did not like it. (12/16/03 Tr., p. 31.)
 {¶ 39} He also testified that he did not speak to Appellant's counsel or investigator prior to or during trial. (12/16/03 Tr., p. 33.) He did not recall if anyone asked him for information prior to or during trial. (12/16/03 Tr., p. 33.) He testified that he might have sent a letter to the state prior to trial, but he could not recall to whom or recall the contents of that letter. (12/16/03 Tr., p. 33.)
 {¶ 40} Atlee Rosenberger II, who is Carrie Rector's father, testified that he stayed at Appellant's home during the Thanksgiving and Christmas holidays in 1999. (12/16/03 Tr., pp. 36-37.) He stated that, "as far as I can remember I don't ever remember [the child] staying at Tom's and Carrie's when I stayed there." (12/16/03 Tr., pp. 37.) He did not testify directly as to whether the victim actually was or was not at Appellant's home during those holidays, but only that he could not remember a time when both he and the child stayed overnight at Appellant's home at the same time. He testified that other children did stay overnight at Appellant's home when he was there, but he could not remember the victim being one of those children. (12/16/03 Tr., p. 38.)
 {¶ 41} He testified that he attended the family gathering at Donna and Delbert Rector's home on Thanksgiving of 1999, and that his granddaughter was also there. (12/16/03 Tr., pp. 36, 38.) He stated that his memory was a little faulty about all of these events. (12/16/03 Tr., p. 39.) He testified that he did not talk to Appellant's counsel about these events before or during the trial, but may have spoken to an investigator for the state. (12/16/03 Tr., p. 40.)
 {¶ 42} Delbert Rector, Appellant's father, testified that Appellant and the victim were both at his home on Thanksgiving day and Christmas day of 1999. (12/16/03 Tr., pp. 42-43.) He testified that the child left sometime in the afternoon and was taken back to Paul Vogley. (12/16/03 Tr., p. 42.) He testified that the child did not spend the night at his house on either day. (12/16/03 Tr., p. 42.) He testified that it was possible that Appellant and the child could have been alone together while they were at his house on Thanksgiving and Christmas. (12/16/03 Tr., pp. 46-47.) He testified that he did not talk to any attorney or investigator before or during trial. (12/16/03 Tr., p. 44.)
 {¶ 43} Appellant also attempted to introduce the victim's school schedule into evidence. Appellant desired to show that school was in session on the days prior to Thanksgiving of 1999. The point of this document was to demonstrate that the child was not with Carrie Rector and Appellant on those days, based on Carrie's testimony that her daughter did not spend the evening with her if she had school the next day.
 {¶ 44} It is difficult to find very much evidence in the aforementioned testimony that is even remotely relevant to Appellant's claim of ineffective assistance of counsel. Looking first at Carrie Rector's testimony, her answers were equivocal at best concerning the whereabouts of her daughter on Thanksgiving and Christmas. Carrie Rector's testimony was apparently intended to show that her daughter did not stay at Carrie's house on Thanksgiving night or Christmas Eve of 1999, although she made it very clear that she and Appellant were with the child during Thanksgiving day and Christmas day. Her testimony did not exclude the possibility that she may have had custody of her daughter at other points during the Thanksgiving and Christmas school breaks in 1999. As noted earlier, count three of the indictment charged Appellant with raping the child "on or about December 24, 1999[.]" Count four of the indictment charged Appellant with raping her "on or about November 20, 1999 to November 27, 1999[.]" Carrie's testimony does not provide a full alibi to the charges in the indictment, nor does it undermine the state's case that Appellant committed the crimes on or about those dates.
 {¶ 45} Carrie's testimony also does not indicate what information she gave to Appellant's counsel before the original trial. Thus, it is not clear that Appellant's counsel had prior access to the information that was eventually revealed at the December 16, 2003, hearing.
 {¶ 46} Carrie Rector's father and Appellant's father were both equally hesitant and equivocal in the their testimony. They both also confirmed that Appellant and the victim were at Delbert Rector's house on Thanksgiving and Christmas. They both thought that the child had left sometime later in the afternoon or evening. Carrie's father could not specifically remember if the child spent the night at Appellant's home on those two holidays, but only recalled generally that she did not stay overnight at Appellant's home when he was also spending the night there.
 {¶ 47} As the trial judge pointed out in his judgment entry, it would have been a very questionable trial strategy to present an alibi defense without evidence to sustain the full alibi, as the incomplete defense would only have focused attention on the time periods not covered by the alibi.
 {¶ 48} The most interesting aspect of the testimony of these witnesses is that it does not materially differ from what Paul Vogley himself testified at trial. Appellant would have this Court believe that the evidence at trial could only have been used to prove that the rapes occurred at Appellant's home on Thanksgiving night and Christmas Eve, and that it was Paul Vogley who established these facts. Paul Vogley, though, testified at trial that he had custody of his daughter for Thanksgiving and Christmas in 1999, but that the child spent a portion of those holidays with Carrie Rector. (3/26/01 Tr., pp. 90, 95, 101-102.) It was the victim herself who testified that the rapes occurred in her bedroom at Appellant's home sometime during the Thanksgiving and Christmas school breaks in 1999. (3/26/01 Tr., pp. 188, 192.) Thus, the evidence presented by Appellant in support of his postconviction relief motion contradicts part of the victim's testimony at trial, but is also consistent with part of the evidence presented at trial, particularly Paul Vogley's testimony.
 {¶ 49} As stated earlier, Appellant espouses two theories in his motion for postconviction relief. The first theory is that counsel failed to call witnesses who could have provided an alibi for the times and places that two of rapes occurred. The second is that Paul Vogley fabricated the rape charges and somehow was able to manipulate the victim and the prosecutor's office into collaborating with the fabrication. The testimony presented at the postconviction relief hearing, though, primarily works to discredit these two theories. The testimony of Carrie Rector, Atlee Rosenberger II, and Delbert Rector, may have helped to narrow the time frame and location of the crimes, but these witnesses did not present a cogent alibi to the entire periods of time covered in the indictment, and their testimony essentially confirmed the testimony of Paul Vogley concerning the whereabouts of the child on Thanksgiving and Christmas Eve. It is unclear how these witnesses could have been used to demonstrate that Paul Vogley had somehow fabricated or induced the child to lie about the rape charges, when their testimony tends to support that Paul Vogley was telling the truth at trial.
 {¶ 50} Furthermore, there are significant credibility issues pertaining to all five of Appellant's witnesses. A trial court is called upon to weigh the credibility of witnesses in postconviction relief proceedings. State v. Otte, 8th Dist. No. 84455, 2005-Ohio-100. Although the trial court did not explicitly state that he disbelieved the witnesses, it is clear that the trial court did not find them to be credible enough to undermine the victim's testimony at trial. Carrie Rector's testimony was so vague that it was difficult to determine any particular details that she remembered. Carol Zorger's testimony is problematic because she never explained why she had not previously divulged her conversation with Paul Vogley and his supposed admission that he falsely charged someone of fondling his daughter. Atlee Rosenberger III appeared to be biased when he revealed his antagonism toward Paul Vogley. His theory that Paul Vogley somehow fabricated the rape charges to prevent Carrie from exercising visitation is illogical, given that Carrie had unlimited visitation rights and that Paul Vogley never attempted to interfere with visitation. Atlee Rosenberger II admitted that his memory of the events of 1999 was very faulty. Finally, Delbert Rector is Appellant's father, which raises the question whether his testimony was biased. These credibility problems support the trial court's ultimate conclusion that these witnesses would not have altered the outcome of the trial. Although we have not attempted to weigh the credibility of these witnesses, we do note these credibility factors as additional reasons for understanding the judgment of the trial court.
 {¶ 51} Ultimately, the only piece of evidence that is significant throughout these postconviction proceedings is Carol Zorger's hearsay testimony that Paul Vogley allegedly admitted fabricating sexual assault charges against someone other than Appellant. The entire relevant part of this brief testimony has already been quoted. The testimony is vague, and Carol Zorger could not remember exactly when Paul Vogley supposedly made the statement. Nevertheless, if she had told counsel about this alleged conversation, and if counsel had then decided not to use it, it is possible such a decision might have had some impact on a case based almost entirely on the testimony of an eight-year old child victim. In other words, an argument may be made that this testimony might have satisfied the second prong ofStrickland, namely, that counsel's actions prejudiced the defendant and created a reasonable probability that the result of the trial would have been different.
 {¶ 52} Carol Zorger, though, never testified that she told anyone about her alleged conversation with Paul Vogley. Thus, the ineffective assistance of counsel claim that Appellant is raising on appeal must be that counsel should have somehow anticipated that Paul Vogley had such a conversation with someone, and then should have assumed that Carol Zorger was that person, even though she had never mentioned such a conversation to anyone. Ultimately, Appellant's argument is more akin to an alleged failure of counsel to fully investigate the facts rather than an argument of faulty trial tactics. A court, "will not infer a failure to investigate a defense by counsel from a silent record." State v. Skatzes, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 193.
 {¶ 53} There is nothing in Appellant's evidence that would have led counsel to randomly ask Carol Zorger if she knew about Paul Vogley fabricating sexual assault allegations. Furthermore, Appellant did not provide even the slightest evidence that Paul Vogley actually tried to manipulate his daughter to alter her testimony. The entire inference of manipulation must be premised on the sole fact that Paul Vogley was the residential parent of the victim, and not on any direct evidence. Appellant did attempt to infer at trial that the prosecutor may have drafted the victim's testimony and then had her memorize it, but there was nothing linking Paul Vogley to the prosecutor's actions. Based on the evidence in the record, we cannot conclude that reasonably competent counsel would have uncovered or pursued the accusations against Paul Vogley, nor would reasonable, competent counsel have been able to use such information at trial.
 {¶ 54} It is apparent that Appellant's theories for supporting postconviction relief are founded on inferences built upon other inferences, and upon impossible assumptions about what reasonably, competent counsel would do.
 {¶ 55} Finally, even if we assume that counsel knew of all these witnesses, knew the content of their potential testimony, and made a conscious choice to exclude them, there remains the valid presumption that counsel's trial decisions were tactical choices. As mentioned earlier, trial tactics rarely can be used to establish ineffective assistance of counsel. As the trial court points out, Appellant's counsel did attempt to discredit the victim at trial by creating the inference that the prosecutor had composed notes that the child memorized. Now, in these postconviction proceedings, Appellant argues that trial counsel should have concentrated on discrediting Paul Vogley in order to undermine the victim's testimony. Given the paucity of evidence that Appellant could rely on to discredit Paul Vogley, and given that some of his witnesses would actually have supported Paul Vogley's trial testimony, it would have been a difficult and questionable strategy to employ at trial. Nevertheless, both strategies could have been used at trial, and counsel picked one of them over the other. It is clear from the record that counsel did have a trial strategy, did attempt to discredit the victim at trial, and concentrated on the lack of physical evidence to overcome the victim's testimony. The fact that another attorney may have used a different strategy is not sufficient to establish ineffective assistance of counsel.
 {¶ 56} Appellant's evidence does not establish that his trial counsel was ineffective either in its trial tactics or in its presumed failure to uncover the content of the evidence produced at the December 16, 2003, hearing. Thus, Appellant's sole assignment of error is overruled and the judgment of the trial court is affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs in judgment only.