OPINION
{¶ 1} Defendant-appellant, Atropin Palmer, appeals from a Jefferson County Common Pleas Court judgment convicting him of aggravated burglary and escape and the resulting sentence following a jury trial.
 {¶ 2} Just after midnight on September 1, 2004, Michael Merritt was watching television in his home in Steubenville when he heard his dog barking and a woman crying out for help. He looked out his window and saw appellant holding a woman down and punching her. Merritt called the police and then went out to help the woman.
 {¶ 3} The woman, Amber Hood, ran with Merritt back to his house and he ushered her inside. Appellant followed them onto Merritt's porch. Merritt pushed appellant out of the way, closed his front door, and locked the deadbolt. According to Merritt, appellant punched out the glass windows in his front door and unlocked the deadbolt. Appellant then entered Merritt's foyer. The two struggled and appellant took a swing at Merritt. Merritt eventually forced appellant out of the house and appellant ran away.
 {¶ 4} Patrolman Matthew Smarrella arrested appellant later that day on a charge of aggravated burglary. Appellant was taken to jail and processed. Later, while Detective Anthony Piergallini was taking appellant's fingerprints, appellant ran out of the police department. Numerous officers chased after appellant and caught him in an alley.
 {¶ 5} A Jefferson County grand jury indicted appellant on one count of aggravated burglary, a first degree felony in violation of R.C. 2911.11(A)(1); one count of escape, a second degree felony in violation of R.C. 2921.34(A)(1); two counts of aggravated menacing, first degree misdemeanors in violation of R.C. 2903.21; one count of assault, a first degree misdemeanor in violation of 2903.13(A); one count of carrying a concealed weapon, a first degree misdemeanor in violation of R.C. 2923.12; one count of falsification, a first degree misdemeanor in violation of R.C. 2921.13(A)(3); and one count of resisting arrest, a first degree misdemeanor in violation of R.C.2921.33(B).
 {¶ 6} The case proceeded to a jury trial on November 23, 2004. Just prior to trial, appellant filed a motion to sever his indictment. He requested that the court grant him two separate trials — one on the escape charge and one on the aggravated burglary charge. Appellant asserted that if the jury found him guilty of one charge it would automatically find him guilty of the other. The court denied appellant's motion. Additionally, right before trial, plaintiff-appellee, the State of Ohio, dismissed all misdemeanor counts in the indictment. Thus, the case proceeded on an amended indictment containing only the two felonies — aggravated burglary and escape.
 {¶ 7} The jury found appellant guilty as charged. The court dismissed the jury and immediately proceeded to sentencing. It sentenced appellant to six years for aggravated burglary and four years for escape, to be served consecutively.
 {¶ 8} Appellant filed a timely notice of appeal on December 2, 2004.
 {¶ 9} Appellant's counsel raises three assignments of error in his brief. Appellant also filed a supplemental brief in which he raises an additional five assignments of error. We will first address those alleged errors raised by counsel and then those alleged errors raised by appellant pro se. The first assignment of error states:
 {¶ 10} "AS A RESULT OF THE TRIAL COURT'S DENYING APPELLANT'S CRIMINAL RULE 14 MOTION TO SEVER COUNTS 1 AND 2 OF THE INDICTMENT FOR PURPOSES OF TRIAL, APPELLANT WAS DENIED A FAIR TRIAL."
 {¶ 11} Appellant argues that the trial court should have severed his indictment for purposes of trial. He argues that he could not receive a fair trial on the aggravated burglary charge when the jury was allowed to hear of his alleged escape. Evidence of his escape, appellant argues, was not relevant to the aggravated burglary charge. Additionally, he contends that the alleged escape occurred eight hours after the alleged aggravated burglary, in a different location and under circumstances unrelated to the aggravated burglary charge. Appellant asserts that had the two charges been tried separately, evidence about the escape would have been irrelevant and inadmissible at the aggravated burglary trial. He claims that since the evidence about the escape was highly prejudicial, separate trials were necessary.
 {¶ 12} Initially it should be noted that appellant's motion was untimely. Crim.R. 12(D) provides that all pretrial motions shall be made within 35 days after arraignment or seven days before trial, whichever is earlier. A motion to sever the charges of an indictment is a pretrial motion. Crim.R. 12(C)(5). Appellant filed his motion to sever the charges in the indictment on the day of trial. Thus, his motion was untimely.
 {¶ 13} Nonetheless, the trial court still considered and ruled on appellant's motion. Thus, we too will consider whether the charges should have been severed.
 {¶ 14} Whether a defendant shall be tried separately on different counts of an indictment is a matter within the trial court's discretion. State v. Strobel (1988), 51 Ohio App.3d 31,32, 554 N.E.2d 916; Braxton v. Maxwell (1965),1 Ohio St.2d 134, 135, 205 N.E.2d 397. Thus, we will not reverse the trial court's judgment absent an abuse of discretion. An abuse of discretion connotes more than an error of law or of judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144.
 {¶ 15} Crim.R. 8(A) provides that two or more offenses may be charged in the same indictment if the offenses are (1) of the same or similar character, or (2) are based on the same act or transaction, or (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or (4) are part of a course of criminal conduct.
 {¶ 16} Crim.R. 14 provides that if it appears that a defendant is prejudiced by a joinder of offenses in an indictment for trial, the court shall order an election or separate trial of counts or provide such other relief as justice requires.
 {¶ 17} If a defendant claims the court erred in refusing to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced. State v.Torres (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." State v. Schaim (1992), 65 Ohio St.3d 51,59, 600 N.E.2d 661.
 {¶ 18} In this case, evidence of appellant's escape would be admissible in his aggravated burglary trial if the counts were severed. The Ohio Supreme Court has noted, "`[i]t is to-day universally conceded that the fact of an accused's flight,escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.'" (Emphasis added.) State v. Eaton (1969),19 Ohio St.2d 145, 160, 196, 249 N.E.2d 897, vacated on other grounds (1972), 408 U.S. 935, 92 S.Ct. 2857, 33 L.Ed.2d 750, quoting 2 Wigmore, Evidence (3 Ed.) 111, Section 276. Appellant claims that the escape was unrelated to the aggravated burglary because it occurred eight hours after the aggravated burglary. However, the two crimes are intertwined. Appellant was arrested for aggravated burglary. He was then taken to jail and processed on the aggravated burglary charge. He was later fingerprinted again at the police station pursuant to police procedure for felonies. Before appellant even washed the fingerprint ink from his fingers, he took off out of the police station. Thus, while the escape did not occur until hours after the burglary, evidence of the escape would still be admissible to prove appellant's guilt of aggravated burglary.
 {¶ 19} Appellant's argument for separate trials, that the evidence of the escape would be inadmissible in his aggravated burglary trial, lacks support. Thus, we cannot conclude that the trial court abused its discretion in overruling appellant's motion to sever the counts of the indictment. Accordingly, appellant's first assignment of error is without merit.
 {¶ 20} Appellant's second assignment of error states:
 {¶ 21} "TRIAL COURT'S ORDERING CONSECUTIVE SENTENCES DID NOT COMPLY WITH RC 2929.14(E), AND WAS NOT INCONFORMITY [sic.] WITH THE PRINCIPLES OF OHIO'S FELONY SENTENCING STATUTES."
 {¶ 22} Appellant contends that the court should not have ordered his sentences to run consecutively. He argues that the information provided to the court regarding his prior convictions was inaccurate. Appellant points out that he informed the court that not all of the prior convictions belonged to him, yet the court still considered them in imposing consecutive sentences. Furthermore, appellant asserts that the trial court failed to make the necessary findings to order that he serve his sentences consecutively.
 {¶ 23} The court sentenced appellant to six years for aggravated burglary and four years for escape, to be served consecutively. While both of these sentences are more than the minimum prescribed sentences, appellant does not take issue with the non-minimum sentences.
 {¶ 24} In order to impose consecutive sentences the court must make certain findings and give reasons supporting those findings at the sentencing hearing. State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, at paragraph one of the syllabus. A court may impose consecutive sentences upon an offender if the court finds three statutory factors: (1) that consecutive sentences are necessary to punish the offender or protect the public from future crime; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that one of the enumerated circumstances found in R.C. 2929.14(E)(4)(a) through (c) exists.[1] Id. at ¶ 13; R.C. 2929.14(E)(4). Additionally, the sentencing court must comply with R.C.2929.19(B). Comer, 99 Ohio St.3d at ¶ 14. According to R.C.2929.19(B)(2)(c), the court must "make a finding that gives its reasons for selecting the sentence imposed" if it imposes consecutive sentences.
 {¶ 25} At the sentencing hearing, the court did not make the necessary findings. It only made the following findings:
 {¶ 26} "Whenever I look at the guidelines for factors that are to be considered and the overriding principles and purposes, the overriding principles are to punish the offender and protect the public from crime. Put you in prison to do that. I think it is consistent with the principles that you would be sentenced to prison. I think it would demean the seriousness of the crime to do anything other than sentence you to a prison term.
 {¶ 27} "There was attempted injury and actually there was injury in this matter which would tend to make it a more serious offense. None of the facts for a less serious offense apply in you case.
 {¶ 28} "Recidivism factor is more likely than not because you do have a history of some criminal convictions, or juvenile adjudications.
 {¶ 29} "You apparently have not responded favorably to sanctions imposed before you had probation. Although you may have completed your probation you still went out and committed other crimes afterwards. I don't think any of the recidivism less likely factors apply.
 {¶ 30} "I do not find you are a repeat violent offender." (Tr. 179-80).
 {¶ 31} The court never found that consecutive sentences were needed to punish appellant or to protect the public. The court did note that the overriding principles and purposes of criminal sentencing are to punish the offender and to protect the public. But it did so in a discussion about why a prison term was necessary, not why consecutive sentences were necessary. Furthermore, the court made no mention that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and to the danger he posed to the public. Thus, the court erred in failing to make the necessary findings to sentence appellant to consecutive sentences. Additionally, the court failed to make a finding that gave its reasons for selecting consecutive sentences. Accordingly, appellant's second assignment of error has merit.
 {¶ 32} Appellant's third assignment of error states:
 {¶ 33} "THE CONVICTION OF THE DEFENDANT ON COUNT 1 OF THE INDICTMENT, AGGRAVATED BURGLARY, IN VIOLATION OF RC2911.11(A)(1), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
 {¶ 34} Appellant argues that his conviction for aggravated burglary was against the manifest weight of the evidence. Specifically, appellant contends that appellee failed to prove that he attempted to inflict physical harm on anyone once he entered Merritt's home. He does not take issue with his escape conviction.
 {¶ 35} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 36} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 37} The jury convicted appellant of aggravated burglary in violation of R.C. 2911.11(A)(1), which provides in pertinent part:
 {¶ 38} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
 {¶ 39} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another."
 {¶ 40} Merritt was the only witness who testified regarding the aggravated burglary. His testimony was as follows.
 {¶ 41} Merritt was watching television between midnight and 1:00 a.m. when he heard his dog barking and a woman crying out for help. (Tr. 92). When he looked out his window, Merritt saw appellant holding Hood down and punching her. (Tr. 92). Merritt called the police and ran out to help Hood. (Tr. 93). Hood got away from appellant and Merritt told her to run into his house. (Tr. 94). Merritt and appellant followed Hood up onto Merritt's porch. (Tr. 94). Merritt told appellant to get off of his porch. (Tr. 94). He then went into his house and forced the front door closed against appellant. (Tr. 94-95). Merritt locked the deadbolt. (Tr. 95). Appellant then broke the glass in Merritt's front door, reached in, unlocked the deadbolt, and entered Merritt's foyer. (Tr. 95-96). Once appellant was in the house, he tried to push through Merritt and an altercation ensued. (Tr. 97). Merritt threw two punches at appellant. (Tr. 98). Appellant swung at Merritt in an attempt to punch him, but missed. (Tr. 98). Merritt was then able to force appellant out of his house. (Tr. 96-97).
 {¶ 42} Merritt's testimony clearly demonstrated that appellant used force to trespass into his home. It also clearly established that appellant attempted to inflict physical harm on Merritt when he took a swing at him. Appellant claims, however, that Merritt's testimony did not prove that when he entered the home, he had the intent to commit a criminal offense inside.
 {¶ 43} The jury could have inferred appellant's intent to commit a criminal act from Merritt's testimony regarding the events that transpired. Outside, appellant was holding Hood down and punching her. Once Hood got away from appellant, he chased her onto Merritt's porch. When Hood went inside and Merritt locked the door, appellant broke the windows and forced his way into Merritt's home. Appellant tried to push past Merritt and took a swing at him when Merritt tried to force appellant from his home. From these facts, the jury could reasonably infer that appellant had the intent to assault Hood and/or Merritt once inside the home. The trier of fact may rely on circumstantial evidence and all reasonable inferences arising there from in arriving at its verdict. State v. Jenks (1991),61 Ohio St.3d 259, 265, 574 N.E.2d 492. Given the events that led up to appellant breaking into Merritt's home, we cannot conclude that the jury lost its way in finding that appellant had the intent to commit a criminal act in the home. Thus, appellant's aggravated burglary conviction was not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is without merit.
 {¶ 44} Appellant's first pro se assignment of error states:
 {¶ 45} "IMPROPERLY JURY SELECTION, PREJUDICIAL IMPACT [sic.]."
 {¶ 46} Here appellant argues that he was prejudiced because several of the jurors were influenced by "political and social afiliations [sic.]." Specifically he points to the following jurors. Juror 12 was once represented by the prosecutor in the case. Juror 9 has a family member who is employed by the Jefferson County Sheriff's Department. And Juror 4 has a friendship with prosecutor Ferro and his wife. He claims that these jurors were influenced by the people they knew.
 {¶ 47} Since appellant did not object to the seating of any of the above mentioned jurors, we will review this assignment of error for plain error. Plain error should be invoked only to prevent a clear miscarriage of justice. State v. Underwood
(1983), 3 Ohio St.3d 12, 14, 444 N.E.2d 1332. Plain error is one in which but for the error, the outcome of the trial would have been different. State v. Long (1978), 53 Ohio St.2d 91, 97,372 N.E.2d 804.
 {¶ 48} We will examine each of the three jurors' voir dire to consider appellant's allegations.
 {¶ 49} Juror 12 informed the court that the prosecutor represented her in her divorce years ago. (Tr. 21). She stated that he did not currently represent her. (Tr. 21). Appellant's counsel questioned this juror. Counsel asked her whether the fact that the prosecutor represented her would make her more likely to believe the prosecution, to which she responded "no." (Tr. 46). She also stated that her prior relationship with the prosecutor would not influence her and that she could listen to both sides and judge the case fairly. (Tr. 46).
 {¶ 50} Juror 9 stated that he has a son-in-law who works as a jailer for the sheriff's department. (Tr. 22-23). The court noted that no one from the sheriff's department would be testifying in this case but that several Steubenville police officers would be testifying. (Tr. 23). It then asked the juror whether that would affect his ability to be fair and impartial, to which he responded "no." (Tr. 23). Appellant's counsel also questioned this juror. She asked him if anything about his son-in-law working as a jailer would make him tend to believe somebody who is accused of a crime may be guilty more so than somebody else, to which he again responded, "no." (Tr. 38). He also stated the fact that his son-in-law works as a jailer would not make him side with law enforcement over an accused person. (Tr. 38).
 {¶ 51} Juror 4 stated that she was friends with Richard Ferro and Ferro's wife. Richard works for the prosecutor's office. (Tr. 64). The court questioned her about this friendship. The juror stated that her friendship with Ferro would not affect her ability to be fair and impartial. (Tr. 64). Counsel also questioned her. The juror stated that she would not feel more sympathetic to the prosecutor's side of the case. (Tr. 66). The juror further stated that she would not feel embarrassed or slighted if she saw Ferro and thought that the prosecution did not carry its burden. (Tr. 67). Finally, she stated that she believed appellant was innocent until the state proved its case. (Tr. 67).
 {¶ 52} After reviewing the voir dire of these jurors, we conclude that the court did not err in seating them. Both the court and appellant's counsel questioned each juror about their relationships with the alleged influential people. Each juror stated that their relationships with those people would not affect their judgment in this case. Thus, the trial court did not commit plain error by failing to sua sponte remove the above referenced jurors.
 {¶ 53} Appellant next asserts that Merritt was present in the courtroom when the prosecutor began his opening statement. The court then advised Merritt to leave. Appellant alleges some sort of prejudice because the jury saw Merritt leave and then come back to testify.
 {¶ 54} A review of the transcript reveals that the prosecutor began his opening statement. (Tr. 84). Appellant's counsel interrupted and requested a side bar. (Tr. 85). A discussion was held off the record. (Tr. 85). The court then announced that there was a request for the separation of witnesses and ordered anyone in the courtroom who expected to testify to leave the courtroom until called to testify. (Tr. 85-86). There is no indication on the record that the court singled out Merritt as appellant alleges. Furthermore, even if that were the case, the prosecutor had only just begun his opening statement and had not reached the point of telling the jury what happened when Merritt got involved. So Merritt's testimony would not have been influenced by what the prosecutor said. Finally, there is no indication whatsoever that the jury was somehow influenced by Merritt leaving the courtroom and coming back in to testify.
 {¶ 55} Accordingly, appellant's first pro se assignment of error is without merit.
 {¶ 56} Appellant's second pro se assignment of error states:
 {¶ 57} "THE TRIAL COURT ERRED IN ITS INSTRUCTION [sic.] THE JURY TO THE INCORRECT STATEMENT OF THE LAW [sic.]."
 {¶ 58} Appellant contends that the trial court gave three incorrect jury instructions. Again, since appellant failed to object to these instructions, this assignment of error will be reviewed for plain error.
 {¶ 59} First, appellant contends that the court gave an incorrect instruction on the term "force" as used in the aggravated burglary statute.
 {¶ 60} The trial court instructed the jury:
 {¶ 61} "Force means any effort exerted by any means upon or against a person or thing to gain entrance." (Tr. 157).
 {¶ 62} R.C. 2901.01(A)(1) defines force as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 63} Appellant contends that because the statutory definition does not contain the word "effort," the trial court's statement of the law was incorrect.
 {¶ 64} In appellant's proposed jury instructions, he used the word "effort" in the definition of force. Thus, the court merely used part of appellant's proposed instruction.
 {¶ 65} Second, he asserts that the court gave an incorrect instruction on the term "physical harm to person" as used in the aggravated burglary statute.
 {¶ 66} The trial court instructed the jury:
 {¶ 67} "Physical harm to person means any injury or other physiological impairment regardless of its gravity or duration." (Tr. 157).
 {¶ 68} R.C. 2901.01(A)(3) defines physical harm to persons as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 69} Appellant contends that because the court left out the word "illness," the instruction was incorrect.
 {¶ 70} The court likely left the word "illness" out of the definition of physical harm because it has no application to the facts of this case. There were no allegations whatsoever that appellant caused physical harm to anyone by means of an illness. Thus, such an instruction was unnecessary.
 {¶ 71} Third, appellant contends that the court gave an incorrect instruction on the elements of aggravated burglary.
 {¶ 72} The court instructed the jury:
 {¶ 73} "Aggravated burglary. The Defendant is charged with aggravated burglary. Before you can find the the [sic.] Defendant guilty you must find beyond a reasonable doubt that on or about the 1st day of September, 2004, and in Jefferson County, Ohio, the Defendant with purpose to commit a criminal assault on Amber Hood trespassed by force in an occupied structure when another person was present in that structure and the Defendant inflicted or attempted to inflict physical harm on Amber Hood or any other occupant." (Tr. 155-56).
 {¶ 74} R.C. 2922.12(A) provides in part: "No person, by force, stealth, or deception, shall do any of the following * * *."
 {¶ 75} Appellant contends that since the court left out "force, stealth, or deception" the instruction was incorrect.
 {¶ 76} Again, the court merely used the part of the statutory definition of aggravated burglary applicable to the fact of this case. The evidence did not even suggest that appellant used stealth or deception to enter Merritt's home. The evidence demonstrated that he used force. Thus, the court instructed the jury that in order to find appellant guilty, they had to find that he entered the house by force. Furthermore, in his proposed jury instruction, appellant set out the elements of aggravated burglary and wrote "(force) (stealth) (deception)." Thus, it seems that by putting those words in parentheses the way he did, appellant was requesting the court to only use those terms that were relevant to this case.
 {¶ 77} Accordingly, appellant's second pro se assignment of error is without merit.
 {¶ 78} Appellant's third pro se assignment of error states:
 {¶ 79} "INSUFFICIENT EVIDENCE TO SUPPORTED [sic.] THE CONVICTION OF O.R.C. 2911.11(A)(1) [sic.]."
 {¶ 80} Appellant contends that his conviction for aggravated burglary was against both the sufficiency and the manifest weight of the evidence. He claims that appellee failed to prove that he had the intent to get into an altercation with either Merritt or Hood when he entered Merritt's home.
 {¶ 81} Since we have already concluded that appellant's aggravated burglary conviction was not against the manifest weight of the evidence, we need only address his sufficiency argument here.
 {¶ 82} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997),80 Ohio St.3d 89, 113, 684 N.E.2d 668. In essence, sufficiency is a test of adequacy. Thompkins, 78 Ohio St.3d at 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 83} As discussed in appellant's third assignment of error, Merritt testified as to each essential element of aggravated burglary. His testimony demonstrated that appellant trespassed into an occupied structure, by force, when others were present, with the purpose to commit a criminal offense in the structure, and he attempted to inflict physical harm on another. Accordingly, appellant's third pro se assignment of error is without merit.
 {¶ 84} Appellant's fourth pro se assignment of error states:
 {¶ 85} "IMPROPERLY [sic.] CHARGE ON THE ESCAPE ERRED THE TRIAL COURT [sic.]."
 {¶ 86} Appellant's argument here is not entirely clear. It seems that he is attempting to argue that because he was in the process of finger printing and was not yet housed in jail, he should have been charged with some crime other than escape. Once again, appellant failed to object to this alleged error at trial. Thus, we will review it for plain error.
 {¶ 87} The escape statute provides in relevant part: "No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement." R.C. 2921.34(A)(1).
 {¶ 88} Captain Anthony Andriano testified that at the time appellant was apprehended, arrested, and taken to the county jail there was a charge of aggravated burglary against him. (Tr.110). Officer Smarrella testified appellant was processed and taken to the county jail. (Tr. 115).
 {¶ 89} Detective Piergallini testified that officers transported appellant from the county jail to the municipal court. (Tr. 123). Since he still needed fingerprinted, Detective Piergallini walked appellant, handcuffed, to his office. (Tr. 123). Appellant was wearing an orange jail uniform and rubber sandals. (Tr. 124). Detective Piergallini took appellant's handcuffs off so he could take appellant's fingerprints. (Tr. 124). He explained to appellant that although the sheriff's department had already fingerprinted him and taken his pictures, the police department did so again pursuant to police procedure for felonies. (Tr. 125). Detective Piergallini told appellant that he was under arrest for a felony. (Tr. 125). After Detective Piergallini finished fingerprinting appellant, he began to show him where to wash his hands and appellant took off out the door. (Tr. 126). Detective Piergallini gave chase and yelled for appellant to stop. (Tr. 126). Approximately ten officers joined in the chase out into the parking lot and down an alley. (Tr. 127). Many of the officers yelled for appellant to stop. (Tr. 127-28). He did not stop voluntarily. (Tr. 128). One of the officers eventually caught him. (Tr. 128).
 {¶ 90} This evidence fits the definition of escape. Appellant knew he was under arrest for a felony. He was recently transported from jail to court and was wearing jail garb. Detective Piergallini removed appellant's handcuffs solely to take his fingerprints. Appellant purposely ran from Detective Piergallini's office before even washing the fingerprint ink from his hands. And he refused to stop when Detective Piergallini and the other officers yelled out to him. Based on this evidence, appellant was properly charged with and convicted of escape.
 {¶ 91} Accordingly, appellant's fourth pro se assignment of error is without merit.
 {¶ 92} Appellant's fifth pro se assignment of error states:
 {¶ 93} "INEFFECTIVE ASSISTANCE AND INEFFECTIVE REPRESENTATION OF COUNSEL [sic.]."
 {¶ 94} Appellant contends that his trial counsel was ineffective. He bases this contention on several failures by counsel. Each will be addressed in turn.
 {¶ 95} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation.Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. Second, appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, appellant must prove that, but for counsel's errors, the result of the trial would have been different. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 96} Appellant bears the burden of proof on the issue of counsel's effectiveness. State v. Calhoun (1999),86 Ohio St.3d 279, 289, 714 N.E.2d 905. In Ohio, a licensed attorney is presumed competent. Id.
 {¶ 97} First, appellant contends counsel was ineffective for failing to object to Merritt's testimony regarding his hospitalization. Appellant also contends counsel should have obtained Merritt's medical records.
 {¶ 98} Merritt had undergone an angioplasty the morning before this incident. He testified that when the paramedics arrived to assist Hood, they urged him to go to the hospital for observation. (Tr. 97-98). How Merritt's medical condition has any relevance on whether appellant committed aggravated burglary or escape is puzzling. It would not affect the outcome of the trial at all. Thus, we cannot conclude that counsel was ineffective for failing to raise an objection here or solicit medical records.
 {¶ 99} Second, appellant contends counsel should have pointed out the fact that the police report did not indicate that Merritt's wife was present during the investigation, yet Merritt testified that his wife was there.
 {¶ 100} Merritt testified that after appellant broke into his house, he heard a scream and saw his wife and kids standing on the landing looking to see what was going on. (Tr. 96-97). This was the only mention of Merritt's wife. Again, appellant cannot point to any prejudice resulting from his counsel's failure to ask about whether Merritt reported to the police that his wife was present.
 {¶ 101} Third, appellant contends counsel should have challenged the fact that the police report did not indicate that Merritt told the officers that appellant took a swing at him.
 {¶ 102} The police report does not state that Merritt told the officers that appellant took a swing at him. While counsel may have used this information to cross-examine Merritt, it likely would have made no difference in the outcome of the trial. As discussed above, the evidence clearly demonstrated appellant's guilt. Furthermore, reviewing courts are to give great deference to defense counsel's performance and should not second-guess his or her trial tactics. State v. Hubbard, 150 Ohio App.3d 623,782 N.E.2d 674, 2002-Ohio-6904, at ¶ 37.
 {¶ 103} Fourth, appellant contends that his counsel's closing argument prejudiced him. Specifically, he points to her comments that, "I told you in the beginning that you would probably find that crimes were committed" (Tr. 143) and "He [Merritt] claims he [appellant] swung at him. Maybe he did." (Tr. 145).
 {¶ 104} The content of a closing argument is generally considered a tactical decision. State v. Baker, 7th Dist. No. 03-CO-24, 2003-Ohio-7008, at ¶ 18. As to the comments appellant points out, it was a sound trial strategy to be up front with the jury that crimes were likely committed here. There was no evidence or suggestion that crimes did not occur. Counsel may have been attempting to gain the jury's trust by acknowledging that some criminal acts took place so as to achieve an acquittal on more serious charges. Furthermore, there was no evidence that appellant did not swing at Merritt. Counsel was restrained to the evidence. There was not much evidence in favor of appellant's innocence. So again, counsel was likely trying to gain the jury's trust by acknowledging Merritt's testimony.
 {¶ 105} Finally, appellant claims that counsel should have requested a presentence investigation for him before allowing the court to proceed to sentencing. A presentence investigation was not necessary in this case. "A trial court need not order a presentence report pursuant to Crim.R. 32.2(A) in a felony case when probation is not granted." State v. Cyrus (1992),63 Ohio St.3d 164, 586 N.E.2d 94, at the syllabus. Furthermore, appellant has not alleged any prejudice. He has failed to explain what mitigating factors a presentence report might reveal that would cause the court to give him a lesser sentence.
 {¶ 106} Based on the foregoing, we cannot conclude that appellant's counsel was ineffective for any of the reasons set out. Accordingly, appellant's fifth pro se assignment of error is without merit.
 {¶ 107} For the reasons stated above, appellant's convictions are hereby affirmed. His sentence is hereby vacated and the case is remanded for resentencing.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] {¶ a} (a) "The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
{¶ b} (b) "At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
{¶ c} (c) "The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender." R.C.2929.14(E)(4).