[Cite as *State v. Rodenberger*, 2013-Ohio-4676.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 12AP-910 |
| v. | : | (C.P.C. No. 10CR09-5740) |
| Michael T. Rodenberger, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on October 22, 2013

*Ron O'Brien*, Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

*Brian J. Rigg*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, P.J.

{¶ 1} Defendant-appellant, Michael T. Rodenberger, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. Because appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence, we affirm that judgment.

I. Factual and Procedural Background

{¶ 2} Appellant and Carrie Anderson dated each other for almost ten years. In that time, they lived together and had three children. However, Anderson ended the relationship in July 2010 because she felt the relationship had become abusive. A month later, Anderson obtained a protection order against appellant for her and her four

children after appellant hurt her oldest child.[1] Despite the protection order, Anderson spoke with appellant on the phone and visited with him once. She did not let him see her children.

{¶ 3}   In the early morning hours of September 18, 2010, Anderson was at home. Her children were asleep in their bedrooms. She and appellant were talking on the phone. Appellant told Anderson that he wanted to come over and see her. Anderson refused. After he kept calling back and she kept hanging up, Anderson became scared and called the police. While she was still on the phone with the police, Anderson heard a noise outside her window. She told the police that she had a protection order against appellant and that she thought he was outside her apartment.

{¶ 4}   Before the police arrived, appellant broke into Anderson's house through a back door. He had a gun, which he held to Anderson's head, and began to threaten her. When the police arrived, appellant yelled at them that he had hostages. At some point, Anderson saw that appellant was distracted with the police, so she climbed out a window in her bedroom and ran for safety. As she ran, she heard shots being fired at her, but she was able to get behind a police cruiser. Anderson remained at the scene because her children were still inside the house with appellant. After 12 hours of negotiations with police, appellant allowed the children to leave the house. Appellant then surrendered to police.

{¶ 5}   As a result of these events, a Franklin County Grand Jury indicted appellant with one count aggravated burglary in violation of R.C. 2911.11, five counts of kidnapping in violation of R.C. 2905.01, one count of felonious assault in violation of R.C. 2903.11, and five counts of violating a protection order or consent agreement in violation of R.C. 2919.27. Each count also contained a firearm specification pursuant to R.C. 2941.145. Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

{¶ 6}   At trial, Anderson and her oldest child testified to the version of events described above. The jury found appellant guilty of all counts and specifications, and the trial court sentenced him accordingly.

 II.  The Appeal

{¶ 7}   Appellant appeals and assigns the following error:

---

[1] Appellant was not the father of Anderson's oldest child.

THE VERDICT IS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

**A. Standard of Review**

{¶ 8}   In his single assignment of error, appellant contends that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence.  Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency.  *State v. McCrary,* 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton,* 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15.  "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."  *Id.*  In that regard, we first examine whether appellant's convictions are supported by the manifest weight of the evidence.  *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, ¶ 46 (10th Dist.).

{¶ 9}   The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other.  *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997).  When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *Id.* at 387.  An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 10}  In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses.  *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6.  However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, " 'is best able to view the

witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the jury's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. *See also State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus (credibility determinations are primarily for the trier of fact).

{¶ 11} We address each of appellant's convictions separately.

## B. Aggravated Burglary Conviction

{¶ 12} To convict appellant of aggravated burglary in this case, the state had to prove beyond a reasonable doubt that appellant, by force, stealth or deception, trespassed in an occupied structure when another person other than the appellant was present, with the purpose to commit any criminal offense, if the appellant inflicts, or attempts or threatens to inflict physical harm on the victim. R.C. 2911.11(A)(1). Appellant argues that the state did not prove that he intended to commit a crime when he arrived at the apartment. We disagree.

{¶ 13} On the day of these offenses, appellant wanted to come over and see Anderson, but she refused his request. Ignoring her decision, he showed up at her apartment and broke in through a back door. Significantly, he also brought a gun with him when he came to her apartment. In light of this evidence, the jury did not lose its way by concluding that appellant came to the apartment with the purpose to commit a criminal offense. *See State v. Palmer*, 7th Dist. No. 04-JE-41, 2006-Ohio-749, ¶ 43 ("Given the events that led up to appellant breaking into [the victim's] home, we cannot conclude that the jury lost its way in finding that appellant had the intent to commit a criminal act in the home."). Alternatively, appellant could have formed the intent to commit an offense once inside the apartment. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 33, citing *State v. Fontes*, 87 Ohio St.3d 527 (2000), syllabus (to be guilty of aggravated burglary, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass). Appellant's aggravated burglary conviction is not against the manifest weight of the evidence.

### C. Kidnapping Convictions

{¶ 14} To convict appellant of kidnapping in this case, the state had to prove beyond a reasonable doubt that appellant, by force, stealth or deception, removed the victims from where they were found or restrained their liberty, for the purpose of holding them for ransom or to use them as a shield or hostage. R.C. 2905.01(A)(1). Appellant argues that Anderson left on her own and that the state did not prove that he held the children against their will or threatened them. We disagree.

{¶ 15} First, Anderson escaped her apartment when appellant became distracted by the police. She did so, however, only after appellant held her at gunpoint. Appellant then kept the children in the apartment for hours while their mother waited outside and police negotiators talked with appellant. The oldest child, C.S., testified at appellant's trial. He heard appellant yell to the police when he first came inside the house that he had hostages. He saw appellant with a gun and described being scared the entire time he and his siblings were inside the house. He did not want to do anything to upset appellant, so he just sat down and did not do anything. He did not leave the apartment until "he let us out of the house." (Tr. 64.) While C.S. did not testify that he was kept inside the apartment against his will, in light of the totality of the evidence, the jury did not lose its way by concluding that appellant kept the children inside the apartment against their will.

### D. Felonious Assault Conviction

{¶ 16} To convict appellant of felonious assault in this case, the state had to prove beyond a reasonable doubt that appellant knowingly caused or attempted to cause physical harm to Anderson by means of a deadly weapon or dangerous ordnance. R.C. 2903.11(A)(2). Appellant argues that the state did not prove that he ever attempted to cause Anderson physical harm. We disagree.

{¶ 17} Anderson testified that, when appellant entered the apartment, he pointed a gun towards her and threatened her. As she escaped her apartment and ran to safety, she heard multiple gunshots fired and thought they were fired at her. The jury did not lose its way by concluding that appellant attempted to cause her physical harm that night by firing his gun at her. *State v. Gray*, 10th Dist. No. 04AP-938, 2005-Ohio-4563, ¶ 12 (attempt to cause physical harm may be inferred from the act of firing a gun in the direction of an individual).

### E.  Violation of a Protection Order

{¶ 18} To convict appellant of violating a protection order in this case, the state had to prove beyond a reasonable doubt that appellant recklessly violated the terms of a protection order issued pursuant to R.C. 3113.31.  Appellant argues that he did not violate a protection order because all of the underlying convictions must be reversed.  Because we have affirmed all of his underlying convictions, we reject that argument.  The jury did not lose its way in concluding that appellant recklessly violated the terms of the protection order against him with his actions on the morning of September 18, 2010.

## III.  Conclusion

{¶ 19} Appellant's convictions are not against the manifest weight of the evidence. This conclusion also resolves appellant's claims that his convictions are not supported by sufficient evidence.  *Gravely*.  Accordingly, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and O'GRADY, JJ., concur.