OPINION
{¶ 1} Defendant-appellant Jeffrey D. Baker appeals his convictions of rape and gross sexual imposition that were entered after a jury trial in the Columbiana County Common Pleas Court. The main issue presented on appeal is whether his defense counsel rendered effective assistance of counsel. Specifically, appellant alleges that his counsel failed to establish a theory of defense and should not have waived closing arguments. For the following reasons, appellant's claims of ineffective assistance of counsel are without merit, and the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On May 30, 2002, appellant was indicted for rape in violation of R.C. 2907.02(A)(1)(b) for engaging in sexual conduct with his step-daughter who was under thirteen years of age (she was eleven years old) on July 7, 2001. He was also indicted for gross sexual imposition in violation of R.C. 2907.02(A)(4) for engaging in sexual contact with this same step-daughter who was under thirteen years of age (she was eight years old) in 1998. The case was tried to a jury in March 2003. It was established that the victim's mother moved herself and her daughters into appellant's home near East Palestine, Ohio in 1997; however, they moved out in late 1998. The victim's mother then reestablished her relationship with appellant and married him in December 1999. With regards to the gross sexual imposition charge, the victim testified that in 1998, before her mother married appellant, he touched her inappropriately. Specifically, she stated that he touched her chest and her vagina both under and on top of her clothing. (Tr. 261).
 {¶ 3} Against the advice of his counsel, appellant testified before the grand jury. This testimony was replayed at trial. In response to the 1998 allegations, appellant claimed that any sexual contact was accidental or caused by the victim. He related an incident where the victim got into bed with him while he was sleeping; he then rolled over and placed his hand between her legs before he realized that it was not his wife. (Tr. 300). He testified to another incident where he was lying behind the victim on the couch under the covers and she allegedly took his hand and placed it between her legs. (Tr. 304-305). He states he removed her hand and talked to her about it the next day. Appellant also said that the victim once tried to pick him up and her mother got mad because it looked like she was trying to feel him. (Tr. 310). Appellant also volunteered that his wife once accused him of looking through a hole in the bathroom wall while the victim was bathing. (Tr. 315).
 {¶ 4} With regards to the rape charge, the victim testified that she woke up on Saturday, July 7, 2001, entered appellant's bedroom where he was sleeping, and asked him to make her breakfast because her mother left to get a flat tire fixed. She said that appellant pulled her into bed, removed her pajamas, took his own underwear off, touched her chest and the inside of her vagina, kissed her mouth with his tongue, kissed her chest, made her place his penis in her mouth while he used his mouth on her vagina, and then placed his penis in her vagina. (Tr. 267). She testified that he stopped when her mother called to say she was on her way home. Her mother corroborated that she called before coming home.
 {¶ 5} Testimony established that they went to appellant's family reunion in Maryland that Saturday afternoon. Appellant and his wife got into an argument on Sunday, and she returned home with her daughters. On Monday, she decided to go to a hotel before appellant returned home in order to avoid a confrontation. Upon arriving at the hotel, she called her neighbor to tell them she arrived. The neighbor told her that before they left, the victim told the neighbor's son that appellant had raped her. The victim's mother then questioned her daughter and brought her to the emergency room where she was examined.
 {¶ 6} The pediatric emergency medical doctor who examined the victim testified that she found notches in the victim's hymen at the three o'clock and nine o'clock positions, which were strongly suggestive of forced penetration. (Tr. 207). Testimony established that the victim originally reported the rape occurred on a Friday, but she simultaneously reported that it took place the day her mother left to get her flat tire fixed; the tire had been punctured the day before at the Rogers Sale, which only occurs on Fridays. A check to the tire store, dated Saturday, July 7, 2001, was introduced into evidence.
 {¶ 7} The jury returned guilty verdicts on March 25, 2003, and the court entered its finding of guilt the next day. On April 4, 2003, the court sentenced appellant to eight years for rape and three years for gross sexual imposition to run consecutively. Appellant filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 8} Appellant's sole assignment of error contends:
 {¶ 9} "The court of common pleas erred in convicting the defendant because the defendant did not receive effective assistance of counsel throughout his defense."
 {¶ 10} The first general issue presented by appellant is that his trial counsel "failed to establish a theory of defense." Under this argument, he complains that the opening statement did not suggest any evidence that would establish a reasonable doubt. Appellant then criticizes various questions asked by trial counsel about the victim's notched hymen and suggests better questions. Appellant also criticizes counsel's perceived failure to focus on whether there existed a "barrier" that separated the room of the children from appellant's room, or whether a wall had been constructed by the time of the alleged rape. Appellant also states that counsel should have focused more on the fact that appellant testified they left for Maryland at noon, but his wife testified they left around 3:00. Appellant notes that the defense called Sergeant Young to the stand, but he was not there and his testimony was never presented. Appellant then complains that counsel never introduced a lab report establishing that the results of the rape kit came back with no DNA matching that of appellant. Appellant concludes that the combination of these omissions results in a trial strategy that is incoherent and confusing with no "theory of defense".
 {¶ 11} In order to reverse a conviction based upon ineffective assistance of counsel, the defendant must establish deficient performance and prejudice which affects the outcome of the trial. State v. Ballew
(1996), 76 Ohio St.3d 244, 255, citing Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. Deficient performance is characterized by errors so serious that counsel was not functioning as that counsel guaranteed by the Sixth Amendment. Id. Courts strongly presume that counsel's performance falls within the wide range of reasonable professional assistance. Id. at 255-256.
 {¶ 12} We thus refrain from second-guessing most of counsel's decisions on what questions to ask and what arguments to make. See Statev. Goodwin (Sept. 24, 2001), 7th Dist. No. 99CA220, citing State v.Carter (1995), 72 Ohio St.3d 545, 558. A defendant is not guaranteed the right to the best counsel who presents a flawless trial performance. Id., citing State v. Burley (Aug. 11, 1998), 7th Dist. No. 93CA204. Tactical omissions or debatable trial tactics are generally deemed matters of trial strategy rather than error. State v. Clayton (1980),62 Ohio St.2d 45, 47.
 {¶ 13} As aforementioned, even if we were to find deficient performance, the conviction could not be reversed absent outcome determinative prejudice. State v. Bradley (1989), 42 Ohio St.3d 136,142. The defendant must thus show that there is reasonable probability that but for the serious error, the result of the trial would have been different. Id. Our confidence in the outcome must be undermined. Id.
 {¶ 14} As to appellant's first argument, we have held that counsel's choice of remarks in opening statements are within the realm of trial tactics. State v. Carter (June 29, 2001), 7th Dist. No. 2000CO32. Furthermore, appellant's arguments concerning trial counsel's failure to follow up on the notched hymen questions, the questions on the barrier/wall, and the departure time are meritless. Counsel did focus on these issues, and it was not mandatory or necessarily available for counsel to delve any further than he did. As the state responds, any further questioning could have backfired. Moreover, appellate counsel is doing nothing more than taking questions trial counsel asked, and trying to come up with better questions, after the fact, using hindsight. This accomplishes nothing more than to shed some light on the performance of legal counsel and has little to do with the effectiveness of that counsel. See Bradley, 42 Ohio St.3d at 143 (warning that the purpose of an ineffectiveness claim is not to grade counsel's performance).
 {¶ 15} As to Sergeant Young and the rape kit he delivered for testing, the lack of appellant's DNA was not as meaningful as appellant would have one believe. The victim took a bath immediately after the rape. She also changed her clothes. In fact, the rape occurred Saturday morning and the medical examination occurred late Monday night. Considering these facts, it would have been basically impossible for appellant's DNA to have been collected in the rape kit. We also note that the victim opined that appellant did not ejaculate, and such circumstance is implied in her testimony that the intercourse was discontinued after her mother called to report that she was on her way home. As such, the lack of appellant's DNA, whether in the form of semen or hair, in the victim's changed underwear sixty hours after the alleged rape is not exculpatory.
 {¶ 16} In any event, as to Sergeant Young's potential testimony and the exact contents of the lab report, it is well-established that if demonstrating ineffective assistance of counsel requires proof outside the record, then such claim is not properly raised in a direct appeal. See State v. Alicea, 7th Dist. No. 99CA36, 2002-Ohio-6907, at ¶ 35 (citing various Supreme Court cases).
 {¶ 17} In reviewing the transcript, it is clear that defense counsel did have a theory of defense. That defense was that the incidents in 1998 were either accidental or caused by the victim and that the rape never occurred. Defense counsel had to take the facts as they existed. We note that the state had appellant's grand jury testimony to use against him and that appellant had been strongly advised against testifying before the grand jury. Contrary to appellant's assertions, counsel's cross-examination of witnesses was coherent and relevant to the defense theory. (Tr. 187, 191, 217-218, 220, 254-256, 284-286, 348-349, 359, 377-378, 386). For all of the above reasons, we have determined that counsel's performance was not deficient, and even if some error were committed, our confidence in the outcome of this trial is not undermined.
 {¶ 18} The second issue presented under appellant's assignment of error is that his counsel improperly waived the right to closing arguments. As appellant's brief concedes, the failure to present closing arguments is not per se ineffective. The choice to make a closing argument and the content thereof is generally considered a tactical decision. See Ballew, 76 Ohio St.3d at 256-257. Just as the state points out, defense counsel knew that the state intended to split its closing argument into two parts. As such, it could be considered a valid strategical decision to let the state argue, hoping the state intends to save its strongest arguments for rebuttal, and then waive closing so rebuttal never takes place. "As to defense counsel's waiver of closing argument at the mitigation hearing, we find this may have simply been a tactical decision to prevent the state from splitting closing argument and staging a strong rebuttal." State v. Burke (1995), 73 Ohio St.3d 399,405. In line with this Supreme Court holding, this court rejects appellant's argument pertaining to the lack of closing arguments.
 {¶ 19} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.