[Cite as *State v. Russell*, 2014-Ohio-2467.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | CASE NO. 13 CO 16 |
| V. | ) | |
| | ) | OPINION |
| LESTER RUSSELL, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:   Criminal Appeal from Court of Common Pleas of Columbiana County, Ohio Case No. 12CR230

JUDGMENT:                              Affirmed

APPEARANCES:
For Plaintiff-Appellee              Robert Herron
                                               Prosecutor
                                               Ryan Weikart
                                               Assistant Prosecutor
                                               105 S. Market Street
                                               Lisbon, Ohio 44432

For Defendant-Appellant        Attorney Coleen Hall Dailey
                                               323 E. Main Street
                                               Alliance, Ohio 44601

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 2, 2014

DONOFRIO, J.

{¶1} Defendant-appellant Lester Russell appeals his conviction and sentence for two counts of aggravated robbery entered after a jury trial in the Columbiana County Common Pleas Court.

{¶2} Russell, wearing a light blue hoodie and armed with a knife, robbed the BP gas station in Wellsville, Columbiana County, Ohio, on October 18, 2012. Following the robbery, the clerk watched Russell go across the street into the parking lot of a restaurant. After responding to the robbery, police located the hoodie and the knife in the restaurant parking lot. Each contained Russell's DNA.

{¶3} On October 20, 2012, Russell, this time wearing a red hat and again armed with a knife, robbed McGraw's Drive-Thru, also located in Wellsville. This time, the clerk fought Russell and Russell fled out a back alley. The police officer who responded to the robbery recognized Russell from the store's video surveillance of the incident. A red hat found nearby contained Russell's DNA.

{¶4} The clerks from each of the robberies later identified Russell from a photo array as the robber.

{¶5} A Columbiana County grand jury subsequently indicted Russell on two counts of aggravated robbery in violation of R.C. 2911.01(A)(1), first-degree felonies. Russell pleaded not guilty, the trial court appointed him counsel, and the case proceeded to discovery and other pretrial matters. Russell was tried before a jury on March 18, 2013, and March 19, 2013. In his defense, Russell presented his grandmother as an alibi witness for the gas station robbery. As for the drive-thru robbery, he maintained that he was fleeing an attack from four men and the clerk misunderstood the situation.

{¶6} The jury found Russell guilty as charged and the trial court sentenced Russell to three- and six-year terms of imprisonment to be served concurrently. This appeal followed.

{¶7} Russell's appointed appellate counsel has filed a *Toney* brief setting forth two "potential" assignments of error. In *Toney,* this court recognized an indigent defendant's constitutional right to court-appointed counsel for direct appeal of their

conviction. *Id.*, at paragraph one of the syllabus. After a conscientious examination of the record, counsel should present any assignments of error which could arguably support the appeal. *Id.,* at paragraph two of the syllabus. If instead counsel determines that the defendant's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, then counsel should inform the appellate court and the defendant of that by brief and ask to withdraw as counsel of record. *Id.*, at paragraph three and four of the syllabus. The defendant is then given the opportunity to raise, pro se, any assignments of error he chooses. *Id.*, at paragraph four of the syllabus. The appellate court then is duty bound to examine the record, counsel's brief, and any pro se arguments, and determine if the appeal is wholly frivolous. *Id.*, paragraph five of the syllabus. If after determining that the appeal is wholly frivolous, then the appellate court should permit counsel to withdraw and affirm the judgment of conviction and sentence. *State v. Toney*, 23 Ohio App.2d 203, 262 N.E.2d 419 (7th Dist.1970).

{¶8} Appointed appellate counsel filed a no-merit brief on July 11, 2013. On July 31, 2013, this court issued a judgment entry informing Russell of counsel's no-merit brief and granting him 30 days to file his own written brief.

{¶9} On August 9, 2013, Russell filed a two-page document on his own behalf listing what he characterizes as six grounds for an appeal.

{¶10} The no-merit brief filed by Russell's appointed appellate counsel identifies two potential issues for appeal: 1) whether trial counsel's decision not to file a pre-trial motion challenging the photo array constituted ineffective assistance of counsel; and 2) whether the trial court erred in failing to excuse a juror who acknowledged looking at a newspaper. In reviewing these possible appellate arguments, counsel concludes that they have no merit and the appeal is frivolous.

{¶11} The *Toney* decision dictates that this court independently review Russell's case for issues that could possibly be raised in this appeal. As indicated, Russell's appointed counsel has identified two such issues. To the extent that they can be discerned from Russell's own filing, he has also identified other issues.

Because this is an atypical *Toney* case in that it involved a jury trial, our own independent review of the case reveals two other potential issues that could be raised in this appeal.

*Photo Array*

{¶12} We will address the two potential issues identified by Russell's appointed appellate counsel first. The first potential assignment of error identified by Russell's appointed counsel states:

> Ineffective assistance of counsel based on counsel's failure to challenge the photo array in a pretrial motion.

{¶13} In order to prove ineffective assistance of counsel, an appellant must satisfy a two-prong test. First, the appellant must establish that counsel's performance was deficient, and second, the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Even if counsel's performance is considered deficient, a conviction cannot be reversed absent a determination that appellant was prejudiced. *State v. Dickinson*, 7th Dist. No. 03 CO 52, 2004-Ohio-6373, at ¶13, citing *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373. To show that he has been prejudiced by trial counsel's deficient performance, appellant must prove that there is a reasonable probability that but for counsel's serious error, the result of the trial would have been different. *Id.*, citing *State v. Baker*, 7th Dist. No. 03 CO 24, 2003-Ohio-7008, at ¶ 13; *State v. Keith*, 79 Ohio St.3d 514, 534, 684 N.E.2d 47(1997).

{¶14} A court deciding an ineffective assistance claim does not need to "approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. Further, the appellant must affirmatively prove the alleged prejudice occurred. *Id.* at 693, 104 S.Ct. 2052, 80 L.Ed.2d 674. Otherwise, any act or omission of counsel would satisfy the test. *Id.*

**{¶15}** The appellant bears the burden of proof on the issue of counsel's effectiveness, and in Ohio, a licensed attorney is presumed competent. *State v. Carter*, 7th Dist. No. 2000-CO-32, 2001 WL 741571 (June 29, 2001) citing *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). Furthermore, "strategic or tactical decisions will not form a basis for a claim of ineffective assistance of counsel." *Dickinson* at ¶ 11, citing *State v. Clayton*, 62 Ohio St.2d 45, 48-49, 402 N.E.2d 1189 (1980).

**{¶16}** In *Dickinson*, this court stated "[e]ffectiveness is, 'not defined in terms of the best available practice, but rather should be viewed in terms of the choices made by counsel.'" *Id.* at ¶ 12, quoting *State v. Wilkins*, 64 Ohio St.2d 382, 390, 415 N.E.2d 303 (1980). This court urged that the reasonableness of the attorney's decisions must be assessed at the time the decisions are made, and not at the time of assessment. *Id.*, citing *Wilkins*, 64 Ohio St.2d at 390, 415 N.E.2d 303.

**{¶17}** Trial counsel's failure to file a motion to suppress does not necessarily constitute ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). However, the failure to file a motion to suppress may constitute ineffective assistance of counsel when the record demonstrates that the motion would have been granted. *State v. Barnett,* 7th Dist. No. 06-JE-23, 2008-Ohio-1546, ¶ 31.

**{¶18}** In reviewing a suppression decision, the general rule is that the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992), citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Our standard of review requires us to determine whether the trial court's findings are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 100. Then, we independently determine whether the trial court applied the appropriate legal standard. *Roberts,* 110 Ohio St.3d 71 at ¶ 100 (mixed question of law and fact).

**{¶19}** When a witness has been presented with a suspect before trial, due process requires a court to suppress the identification if the presentation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all of the circumstances. *State v. Waddy,* 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992), citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Both parts of the test must be satisfied by a defendant challenging a lineup. *See id.* Thus, if the presentation was not unduly suggestive, the court need not proceed any further in the test. *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 19; *State v. Murphy,* 91 Ohio St.3d 516, 534, 747 N.E.2d 765 (2001).

**{¶20}** Likewise, even if the presentation was unnecessarily suggestive, the identification can still stand if it is reliable under the totality of the circumstances. *Waddy,* 63 Ohio St.3d at 438-439. An identification is unreliable if there is a very substantial likelihood of irreparable misidentification. *Id.* at 439. Factors determining the degree of reliability include: the opportunity of the witness to view the perpetrator during the crime, the witness's degree of attention, the accuracy of the witness's prior description, the level of certainty demonstrated by the witness at the presentation, and the length of time between the crime and the presentation. *Id.* at 439.

**{¶21}** Additionally, On July 6, 2010, a new statute on lineups went into effect. R.C. 2933.83(B). This statute provides: "Prior to conducting any live lineup or photo lineup on or after the effective date of this section, any law enforcement agency or criminal justice entity in this state that conducts live lineups or photo lineups shall adopt specific procedures for conducting the lineups." R.C. 2933.83(A).

**{¶22}** The statute then lists the minimum requirements to be contained within the adopted procedures. For instance, a blind or blinded administrator shall be used unless impracticable in which case the administrator shall state in writing the reason for that impracticability. R.C. 2933.83(B)(1)-(3). Moreover, the administrator shall keep a written record containing the results signed by the eyewitness, confidence statements of the witness, the names of all present, the date and time, any identification of a filler, the names of the fillers, and the sources of pictures. R.C.

2933.83(B)(4). In addition, if a blind administrator is conducting the lineup, the administrator shall inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is. R.C. 2933.83(B)(5).

{¶23} In this case, the photographic array contained six photos. Russell was the only person with a mustache. Although Russell's trial counsel did not file a pre-trial motion to suppress the photo array identifications, his counsel did attempt to make an issue of them at trial. (Tr. 196-205, 253-257.)

{¶24} Although Russell is the only person in the array with a mustache, all of the persons in the array are otherwise nearly identical in complexion, hair length, hair color, eye color, age, height, and weight. The fact that Russell is the only person in the array with a mustache may render the array less than ideal. But, this fact in and of itself is insufficient to make the identification procedure impermissibly suggestive. *State v. Sova*, 8th Dist. No. 71923, 1998 WL 166167 (Apr. 9, 1998) (photo array with picture of appellant as only person with a mustache not impermissibly suggestive procedure); *State v. Moody*, 55 Ohio St.2d 64, 377 N.E.2d 1008 (1978) (insufficient even when a suspect is the only party in a photo array seated and wearing a mustache). Additionally, this court has held that the individuals in the photographs in the lineup need not have nearly identical features. *State v. Croom*, 7th Dist. No. 12 MA 54, 2013-Ohio-5682, ¶ 106, citing *State v. Murphy*, 91 Ohio St.3d 516, 534, 747 N.E.2d 765 (2001), and *State v. Davis*, 76 Ohio St.3d 107, 112, 666 N.E.2d 1099 (1996) (defendant was only one in lineup with bushy, curly hairstyle). However, even assuming the presentation was suggestive, each of the clerk's identifications of Russell was nevertheless reliable under the totality of the circumstances.

{¶25} Portia Cogar, the clerk at the BP who Russell robbed on October 18, 2012, testified that Russell had not done anything to disguise his appearance. (Tr. 242.) She also testified that though she saw he had a knife, her attention was focused on him. (Tr. 243.) Cogar carried on a conversation with Russell for approximately five minutes, with her trying to talk him out of it. (Tr. 241, 248.) She

testified that her in-court identification of Russell as the robber was based on her independent recollection of the robbery. (Tr. 246, 259.)

**{¶26}** Darrell Smith, II, the clerk at McGraw's Drive-Thru who Russell robbed on October 20, 2012, testified that although Russell was wearing a red ball cap he was able to see his face. (Tr. 267.) Russell and Smith spoke and Smith physically "wrestled him out" of the drive-thru to a back alley where Russell fled. (Tr. 267-269.) He testified that his in-court identification of Russell as the robber was based upon his independent recollection of the robbery. (Tr. 270.)

**{¶27}** Cogar's and Smith's testimony reflect that they each had a good opportunity to view Russell during the robberies. Their testimony also demonstrated a high degree of attention to Russell and his appearance; there were no other people present during the robberies to distract the clerks' attention. Therefore, their identification of Russell was reliable.

**{¶28}** Because the photo array was not suggestive and the clerks' identifications of Russell were reliable, the record demonstrates that a motion to suppress the identifications would not have been granted. Thus, the decision by Russell's trial counsel not to pursue a pre-trial motion to suppress the identifications was not deficient performance. Assuming for the sake of argument that it was deficient performance, it cannot be said that admission of the identifications was prejudicial given that there existed a source independent of the photo array to support the clerks' in-court identification of Russell as the robber.

**{¶29}** In the BP case, the clerk observed Russell wearing a light blue hoodie and wielding a knife. (Tr. 243, 245.) As Russell fled after the robbery, she watched him run across the street to a Dairy Queen. (Tr. 244.) Police recovered a light blue hood and knife lying next to the restaurant and each contained DNA belonging to Russell. (Tr. 147-148, 312-314.)

**{¶30}** In the McGraw Drive-Thru case, the clerk observed Russell wearing a red baseball cap. (Tr. 160.) The police recovered a red baseball cap from the back alley of the drive-thru that matched the description of the hat Russell was wearing

given by the clerk. (Tr. 161, 166.) The hat contained DNA belonging to Russell (Tr. 324-327.)

**{¶31}** Additionally, Patrolman Joseph Saraniti, one of the officers who investigated both robberies, testified that he was familiar with Russell as he had "dealt with him many times" in town and at Russell's home. (Tr. 177.) After reviewing the surveillance footage of the McGraw Drive-Thru robbery, he recognized Russell in the footage as the robber. (Tr. 177.)

**{¶32}** In sum, the record does not demonstrate deficient performance on the part of Russell's trial counsel in deciding not to file a pre-trial motion to suppress the identifications stemming from the photo array. Additionally, the admission of those identifications did not result in prejudice such that had they not been admitted the result of the trial would have been different.

**{¶33}** Accordingly, Russell's first potential assignment of error lacks merit.

*Juror Misconduct*

**{¶34}** The second potential assignment of error identified by Russell's appointed counsel states:

> Failure to excuse juror number 10 for deliberate violation of the court's order not to read any newspapers.

**{¶35}** At trial, Russell's grandmother claimed she witnessed a juror reading a newspaper during a lunch recess. Russell's trial counsel moved for a mistrial, the trial court inquired of the juror and denied the motion.

**{¶36}** "Whether the seeing or hearing of articles in newspapers by jurors is a ground for a new trial is largely a matter for the discretion of the trial court, and turns on the special facts in each case and whether or not the accused was prejudiced." *State v. Crissman*, 31 Ohio App.2d 170, 175, 287 N.E.2d 642 (7th Dist.1971).

**{¶37}** In this case, the trial court questioned the juror as follows:

THE COURT: We want to find out basically what happened, you know, over the noon hour. It was reported by someone that they observed your reading a newspaper, or at least having a newspaper.

[JUROR NO. 10]: Okay. I ate lunch at Sweet Jane's across the street. I picked up "The Morning Journal," skipped past all of the court pages. And essentially looked through the sports and read the Dear Abbey, Dear Ann Landers, and a couple of the comics.

THE COURT: Was it today's paper?

[JUROR NO. 10]: Yes.

THE COURT: Did you observe anything in this paper about this case or these proceedings?

[JUROR NO. 10]: No.

THE COURT: Was there anything that you read in the paper that changed your impression about this case or gives you any reason to believe that you can't continue to serve as a Juror in this case?

[JUROR NO. 10]: No. I just, I noticed there was some type of a tanker fire on the front page. And then, like I said, I skipped past everything else.

THE COURT: All right. Have you had any conversations or discussions with anybody outside the Court about the case?

[JUROR NO. 10]: Only that I was serving and I wasn't allowed to speak about it.

THE COURT: Not about the merits or what's been going on, or anything like that?

[JUROR NO. 10]: No. No.

THE COURT: Have you gone on the Internet or done any research or looked at any kind of social blogs, MySpace?

[JUROR NO. 10]: No.

THE COURT: Done anything like that?

[JUROR NO. 10]: No.

(Tr. 411-413.)

**{¶38}** The juror acknowledged reading a newspaper, but stated that she had not read anything about the trial. There is nothing in the record to suggest that Russell was prejudiced in any way as a result. Therefore, as the above colloquy makes clear, the trial court did not abuse its discretion in allowing this juror to remain on the jury.

**{¶39}** Accordingly, Russell's second potential assignment of error is without merit.

*Joinder of Offenses*

**{¶40}** In addition to the potential issues identified by Russell's appointed appellate counsel, Russell has himself identified other issues set forth in his August 9, 2013 filing before this court concerning joinder of offenses, voir dire, a lack of defense witnesses, and irregularities related to the admission of certain exhibits. Approximately one week prior to trial, Russell's trial counsel filed a motion for severance of the offenses. The state filed a memorandum in opposition. And, on March 15, 2013, the trial court filed a judgment entry denying the motion.

**{¶41}** An appellate court will only reverse a trial court's denial of severance if the trial court abused its discretion. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 33. An indictment can contain multiple offenses if the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A) (joinder of offenses). The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged are of the same or similar character. *State v. Coley*, 93 Ohio St.3d 253, 259, 754 N.E.2d 1129 (2001). "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim,* 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992).

**{¶42}** If it appears that a defendant is prejudiced by joinder of offenses, the court shall order separate trials or provide such other relief as justice requires. Crim.R. 14 (relief from prejudicial joinder). The defendant bears the burden to prove prejudice from the joinder of multiple offenses in a single trial and to prove that the trial court abused its discretion in denying severance. *State v. Coley,* 93 Ohio St.3d 253, 259, 754 N.E.2d 1129 (2001). There is no prejudice if the evidence of the offense sought to be severed would have been admissible anyway. *Id.* Alternatively, there is no prejudice if the evidence supporting each offense is simple and direct. *Id.*

**{¶43}** In this instance, there was no prejudice because the evidence as to each offense was simple and direct and was not confusing. Each of the store clerks testified that Russell robbed or attempted to rob them with a knife. In one robbery, the knife, and in both robberies, articles of clothing Russell wore during the robberies were recovered containing his DNA. Therefore, the trial court did not abuse its discretion in denying Russell's motion for severance.

*Voir Dire*

**{¶44}** Another one of the grounds Russell raises is ineffective assistance of counsel based on the alleged failure of his trial counsel to excuse jurors who lived near or knew members of the Wellsville Police Department, the agency that investigated Russell's case.

**{¶45}** Appellate courts are very hesitant to find counsel was ineffective for removing or failing to remove prospective jurors form the jury as the selection of the jury is largely a matter of strategy and tactics. *State v. Lindsey*, 87 Ohio St.3d 479, 489, 721 N.E.2d 995 (2000). Trial counsel is present to witness the demeanor and statements of the prospective jurors and, therefore, may have strategic reasons for acting as he or she did. *Id.*

**{¶46}** In this instance, Russell does not identify the specific jurors that he feels his trial counsel should have excused. Nor does he explain why this would be ineffective. Russell's argument implies that some of the jurors may have been biased, but he does cite to and the record does not reveal that any of the jurors indicated an

unwillingness to "render an impartial verdict according to the law and the evidence submitted to the jury at the trial." Civ.R. 24(C)(9) (governing challenges for cause based on alleged bias). Therefore, Russell has not demonstrated that his trial counsel was deficient in this regard or that he was prejudiced.

*Defense Witnesses*

**{¶47}** In one of the grounds Russell sets forth in support of his appeal, he alleges ineffective assistance of counsel based on the alleged failure of his trial counsel to subpoena "everyone" into court. Russell does not indicate who these people are or what they might have testified to. Therefore, it is impossible at this juncture to ascertain deficient performance or prejudice. To the extent that Russell's allegation of ineffective assistance of counsel in this regard relies on matters yet unidentified by Russell and not in the record before us, he would have to pursue that issue in post-conviction proceedings.

*Irregularities Concerning Admission of Exhibits*

**{¶48}** Another potential issue Russell raises concerns evidence he contends was not sent with the jury for deliberations. A review of the record reveals that after the jury was discharged and the verdicts accepted, the court reporter made the trial court aware of the fact that State's Exhibit 27 and Defendant's Exhibit A did not go to the jury room for deliberations. State's Exhibit 27 was a transcription of an interview police conducted of Russell following his arrest. Defense Exhibit A was the photo array. However, the Defendant's other Exhibits B, C, and D did go back to the jury room even though they were not admitted into evidence. Defense Exhibit B was a police report concerning the McGraw's Drive-Thru robbery and Defense Exhibits C and D were one-page excerpts of testimony from Russell's preliminary hearing.

**{¶49}** Unadmitted exhibits inadvertently given to the jury during deliberations is grounds for reversal only where the defendant has suffered material prejudice as a result. *State v. Adams,* 8th Dist. No. 89919, 2008-Ohio-3136, at ¶ 12 (citations omitted); *State v. Locklin,* 2d Dist. No. 21224, 2006-Ohio-3855, at ¶ 12 (citations omitted); *State v. Westwood,* 4th Dist. No. 01 CA50, 2002-Ohio-2445, at ¶¶ 24-37

(citations omitted). The same review applies to cases where a defendant's exhibits, properly admitted, were not sent to the jury room for deliberations. *State v. Kadri*, 5th Dist. No. CA-86 AP 070050, 1986 WL 15232 (Dec. 24, 1986). *See also* Crim.R. 33(A) (allowing for a new trial where irregularity in the proceedings materially affected the defendant's substantial rights).

**{¶50}** Here, all of the irregularities concerning the exhibits were clearly nonprejudicial to Russell. State's Exhibit 27 was a transcription of an interview police conducted of Russell following his arrest which was introduced at trial but did not go back to the jury for deliberations. Defendant's Exhibits B, C, and D did go back to the jury room even though they were not admitted into evidence. Because these irregularities involved evidence favorable to the state not going to the jury and unadmitted evidence favorable to the defense going to the jury, any prejudice that may have occurred as a result was towards the state, not Russell. As the trial court correctly determined, "the only prejudice that may have resulted was against the State of Ohio. However, because the jury found the Defendant guilty of the offenses charged in the Indictment any error was not prejudicial."

**{¶51}** The only defense exhibit that did not go back with the jury was Defendant's Exhibit A, the photo array. While referenced and introduced before witnesses at trial, the trial court ultimately did not allow its admission into evidence. Because it was not admitted as evidence, it was proper that it did not go back with the jury for deliberations. As detailed under the first potential assignment of error raised by Russell's appointed appellate counsel, the array was not suggestive and the clerks' identification of him was reliable and buttressed by a source independent of the array itself. Moreover, at trial, Russell's trial counsel adequately made the point in front of the jury that Russell's picture was the only one with a mustache. In sum, Russell did not suffer any prejudice as result of the irregularities concerning the exhibits.

*Speedy Trial*

{¶52} The remaining potential issues that could possibly be raised on appeal concern speedy trial, sufficiency and weight of the evidence, and sentencing. A person charged with a felony shall be brought to trial within two hundred seventy days. R.C. 2945.71(C)(2). If the person is held in jail in lieu of bail, as Russell was, each day in jail counts as three days. See R.C. 2945.71(E). The record reflects that Russell was arrested on October 25, 2012. (Tr. 180.) Subsequently, a Notice of Assignment filed in the Columbiana County Common Pleas Court for Russell's case notes a correct try-by date of January 23, 2013. Thus, Russell's trial was scheduled to occur within ninety days from the date of his arrest.

{¶53} However, at a January 3, 2013 scheduling conference, Russell executed an express written waiver of time to a date certain and trial was scheduled for February 11, 2013. On the date set for trial, Russell filed a notice of alibi, claiming that he was at the home of his grandmother, Shirley Salisbury, during the McGraw Drive-Thru robbery. Because a notice of alibi must be filed seven days prior to trial, Russell contemporaneously filed a motion to continue the trial. The trial court granted Russell's motions and rescheduled the trial for March 18, 2013, which was the date Russell's trial was held. Russell's motion to continue extended the time under R.C. 2945.72(H). By expressly consenting to be tried on March 18, 2013 he conceded that this trial date was reasonable and timely.

*Sufficiency & Weight of the Evidence*

{¶54} We move from these pre-trial, procedural issues to evaluate substantive, trial issues. Russell was convicted of aggravated robbery in violation of R.C. 2911.02(A)(1), which provides: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control[.]" Theft is defined in pertinent part as follows: with purpose to deprive the owner of property, knowingly obtaining or exerting control over the property without the consent of the owner or person authorized to give consent or beyond the scope of

the express or implied consent of the owner or person authorized to give consent. R.C. 2913.02(A)(1), (2).

**{¶55}** Deadly weapon is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). The deadly-weapon element of aggravated robbery in R.C. 2911.01(A)(1) does not require a mens rea. *State v. Lester,* 123 Ohio St.3d 396, 2009-Ohio-4225, 916 N.E.2d 1038. In other words, for aggravated robbery, no intent beyond that required for the theft offense must be proven. *State v. Horner*, 126 Ohio St.3d 466, 2010-Ohio-3830, 935 N.E.2d 26, ¶ 40.

**{¶56}** Sufficiency of the evidence deals with legal adequacy rather than the weight or persuasiveness of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In viewing a sufficiency of the evidence argument, we evaluate the evidence in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found that the elements of the offense were proven beyond a reasonable doubt. *Id.*

**{¶57}** After viewing the evidence in the light most favorable to the state, we find that a rational fact finder could easily find the elements of the crime established. Both clerks testified that Russell entered their store brandishing a knife. Upon displaying a knife, he demanded money from the clerks. At the BP, he told the clerk that he was going to stab her and that he needed the money. With a knife in his right hand, he told the clerk at McGraw's Drive-Thru that he needed all of the money in the register. His purpose to deprive the owners without their consent is clear in these actions and in his attempting to exit the stores with the money. As such, there was sufficient evidence that Russell twice committed aggravated robbery.

**{¶58}** Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. In reviewing a manifest weight of the evidence

argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* In fact, where a criminal case has been tried by a jury, only a unanimous appellate court can reverse on the ground that the verdict was against the manifest weight of the evidence. *Id.* at 389, 678 N.E.2d 541, citing Section 3(B)(3), Article IV of the Ohio Constitution (and noting that the power of the court of appeals is limited in order to preserve the jury's role with respect to issues surrounding the credibility of witnesses).

**{¶59}** In conducting our review, we proceed under the theory that when there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one should be believed. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). Rather, we defer to the jury who was best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, and gestures of the witnesses testifying before it, including appellant himself. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1994); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶60}** Upon reviewing the transcript and the evidence, we cannot say that the jury clearly lost its way in weighing the evidence. Besides the testimony of the clerks, Russell left behind items near the scene of each of the robberies containing his DNA. There was photographic evidence from the McGraw's Drive Thru robbery depicting Russell during the crime. Although Russell presented an alibi defense for the BP robbery and claimed the McGraw's Drive-Thru robbery was simply a misunderstanding, the weight to be given the evidence of those defenses and the credibility of the witnesses were primarily issues to be decided by the jury.

**{¶61}** In reviewing this record as a whole, we cannot say that the evidence weighed heavily against a conviction, that the trial court lost its way, or that a manifest miscarriage of justice has occurred. Russell's conviction was not against the manifest weight of the evidence.

*Sentencing*

**{¶62}** Our review of felony sentences is now a limited, two-fold approach, as outlined in the plurality opinion in *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 26. First, we must examine the sentence to determine if it is "clearly and convincingly contrary to law." *Id.* (O'Conner, J., plurality opinion). In examining "all applicable rules and statutes," the sentencing court must consider R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶¶ 13-14 (O'Conner, J., plurality opinion). If the sentence is clearly and convincingly not contrary to law, the court's discretion in selecting a sentence within the permissible statutory range is subject to review for abuse of discretion. *Id.* at ¶ 17 (O'Conner, J., plurality opinion). Thus, we apply an abuse of discretion standard to determine whether the sentence satisfies R.C. 2929.11 and R.C. 2929.12. *Id.* at ¶ 17 (O'Connor, J., plurality opinion).

**{¶63}** Russell was convicted of two first-degree felonies. The possible sentences for a first-degree felony are three, four, five, six, seven, eight, nine, or ten years. R.C. 2929.14(A)(1). The trial court sentenced Russell to concurrent terms of three and six years. Thus, his sentence was within the applicable range.

**{¶64}** Furthermore, the court stated in its sentencing entry that it considered "the record, the information presented at the hearing, the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors under R.C. 2929.12."

**{¶65}** Since the sentence is within the applicable sentencing range and the trial court considered the applicable statutes in determining the appropriate sentence, we find that the sentence is not clearly and convincingly contrary to law and that the trial court did not abuse its discretion by imposing the sentence.

{¶66} In sum, for all of the foregoing reasons, the potential assignments of error raised by Russell's appointed appellate counsel and the grounds for appeal identified by Russell himself in his August 9, 2013 filing before this court are without merit and our own independent review of the case file and appellate filings reveals that there are no appealable issues. The conviction and sentence are affirmed and counsel's motion to withdraw is granted.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.